UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 04-10123-DPW |
| v. ) | |
| ) | Violations |
| ANTHONY VISONE ) | |
| Defendant ) | 26 U.S.C. §7206 (1) |
| ) | (Filing False Tax Return) |
| ) | |

## INDICTMENT

The Grand Jury charges:

I.  **BACKGROUND**

1. At all times material to this Indictment, defendant ANTHONY VISONE was a resident of Massachusetts.

2. At all times material to this Indictment, VISONE was the principal shareholder of First City Management, Inc., a holding company for a number of subsidiaries and affiliates (collectively, "FCM") whose holdings included Corvette dealerships in several states, leasing companies and finance companies. FCM's principal place of business was in Massachusetts.

3. Prior to the transactions set forth below, VISONE had taken over $2 million from FCM which he had characterized as "loans". On more than one occasion, FCM's accountants had advised VISONE that he should repay these amounts. The accountants further warned VISONE that if he did not begin repayment, the Internal Revenue Service would deem the amounts to be dividend income and VISONE would be required to pay significant federal taxes on the amounts he had taken from FCM.

4. On or about January 6, 1995, a complaint for paternity was filed against VISONE in a

1

Commonwealth of Massachusetts Probate Court.

5. Between January 6, 1995, the date the paternity case was filed, and June 7, 1999, the date the judgement was entered, VISONE transferred a significant portion of his assets to other entities over which he maintained control. VISONE also misrepresented his income to the Probate Court.

A.   **THE DIVERTED CHECKS AND PERSONAL EXPENSES**

6. For the 1995 tax year, VISONE reported wage income of $147,000 on his 1995 U.S. Individual Income Tax Return.

7. For the 1996 tax year, VISONE reported wage income of $21,603 on his 1996 U.S. Individual Income Tax Return.

8. Throughout 1996, VISONE caused FCM subsidiaries to issue over 40 checks made payable to him in amounts of either $3,000 or $4,000. During 1996, the total amount of these checks was approximately $148,000. VISONE generally deposited these checks into his personal bank account at the same time he deposited his salary from FCM, and used a portion of the funds to pay personal expenses.

9. In addition, during 1996, VISONE caused FCM to pay numerous personal expenses on his behalf.

10. VISONE did not include as income the amounts of the checks made payable to him and drawn from the FCM subsidiaries on his 1996 U.S. Individual Income Tax Return. In addition, VISONE also failed to include the personal expenses paid directly by FCM on his 1996 U.S. Individual Income Tax Return.

B.  **THE MORTGAGE PURCHASE**

11. On or about February 27, 1996, VISONE and an associate purchased the mortgages on 26 condominiums (hereinafter, the "condos") located in South Boston. VISONE purchased the mortgages for $517,000 using a check drawn on his personal bank account at Fleet Bank. At the closing of the transaction, VISONE received a 59% interest in the mortgages, and his associate received a 41% interest.

12. VISONE and his associate caused an entity called Scottsdale Investments, Inc. (hereinafter "Scottsdale") to be formed, and caused the mortgages to be conveyed to Scottsdale at or near the time of closing. VISONE and his associate arranged to have a third party serve as Scottsdale's nominal president and treasurer. That third party had no ownership interest in Scottsdale.

13. There were insufficient funds in VISONE's personal Fleet bank account to cover the $517,000 check used to purchase the mortgages, and as a result, VISONE's personal bank account was overdrawn. To remedy that situation, on or about February 28, 1996, VISONE caused $517,000 in funds from an FCM account to be transferred to his personal Fleet bank account.

14. After acquiring the mortgages, VISONE and his associate arranged to purchase the condos themselves. They arranged to have a separate realty trust formed to hold title to each of the 26 condos. The trustee of each trust was an entity called Sandkey Investment Group, Inc. ("Sandkey"). VISONE's 59% beneficial interest in each trust was in the name of T.C. Nominee Trust.

15. VISONE had one of FCM's employees manage the condos, and had a second

3

employee deposit the revenues generated from the condos into a bank account in the name of Sandkey. VISONE directed that second employee to issue regular payments from Sandkey's bank account to VISONE's parents.

16. VISONE thereafter used the mortgages and the condos as collateral for several personal loans, totaling about $2 million.

17. The condos were sold for about $2 million in October 2000. Approximately $400,000 of the sale proceeds went to pay the mortgage for a property in Florida in the name of VISONE's father. VISONE later claimed that the Florida property was his residence and that he held an ownership interest in it.

18. Some time after the original mortgage purchase in 1996, VISONE instructed FCM's accountants that a loan of approximately $900,000 had been made to Scottsdale by FCM on or about February 28, 1996. VISONE did not inform the accountants that he had a 59% interest in Scottsdale. VISONE also failed to inform the accountants that he caused FCM to transfer $517,000 into his personal account to cover the $517,000 he had personally paid to purchase the mortgages in Scottsdale's name.

19. Despite the significant value of the condos and the regular revenues they generated, in or about June 1997, VISONE instructed FCM's accountants to write off the loan to Scottsdale as an uncollectible debt. FCM's accountants did so.

20. Despite having received $517,000 from FCM for his personal use, VISONE failed to report any of it as income on his 1996 U.S. Individual Income Tax Return.

## II. COUNT 1 - 26 U.S.C. §7206(1)

21. Paragraphs 1 through 20 of the Indictment are hereby realleged and incorporated as if fully set forth herein.

22. On or about October 16, 1997, in the District of Massachusetts, the defendant

ANTHONY VISONE,

did willfully make and subscribe a U.S. Individual Income Tax Return for tax year 1996, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service which return ANTHONY VISONE did not believe to be true and correct as to every material matter in that said return stated total income on line 22 of $56,319, whereas, as he then and there well knew and believed, ANTHONY VISONE received total income during 1996 substantially in excess of that heretofore stated.

All in violation of Title 26, United States Code, Section 7206(1).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


_____
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE


DISTRICT OF MASSACHUSETTS April 14, 2004.

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK    3:10 pm

6