UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 04-10123 DPW

UNITED STATES OF AMERICA   )
                           )
            v.             )
                           )
ANTHONY VISONE,            )
            Defendant      )
_____)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

An indictment charging Anthony Visone ("Visone") with a violation of 26 U.S.C. §7206(1) for the year 1996 was returned on April 14, 2004.[1] On August 25, 2004 a superceding indictment was returned charging Visone in two counts with violations of 26 U.S.C. §7206(1). Count I charged him with filing a false tax return for the year in that he underreported his total income in 1996; Count II charged him with filing a false tax return in that he underreported his total income for the year 1997.

### STATEMENT OF FACTUAL ALLEGATIONS

The original indictment alleged that Visone was the principal shareholder of First City Management, Inc(FCM). It further alleged that prior to 1995 Visone had taken over Two Million Dollars from FCM which he had characterized as loans. It further alleged that FCM's accountants had advised Visone that he should repay these amounts and that if he did not repay, the the Internal Revenue Service would deem the amounts to be dividend income and he would be required to pay significant federal taxes on the loans.

---

[1] The defendant had signed written agreements to extend the Statute of Limitations as to the year 1996 up to April 15, 2004.

In paragraph 4 of the Complaint it was alleged that in January, 1995 a complaint for paternity was filed against him in a Massachusetts probate court and during the pendency (1995 to June 7, 1999) of that case he transferred a significant portion of his assets to other entities over which he maintained control. It further alleged that at an unspecified time he misrepresented his income to the Probate Court.

      The indictment then alleged that he diverted certain checks from FCM to his personal use and that he had FCM pay certain personal expenses. These payments allegedly were not included as income on his individual income tax return for 1996. The indictment went on to allege that Visone, with another, purchased certain mortgages with funds advanced from FCM which FCM recorded on its books as a loan to Scottsdale Investment, Inc. (Scottsdale). The transaction was described in the indictment as follows: Visone and his associate formed an entity called Scottsdale Investments, Inc. in whose name the mortgages were held. It alleged that Visone had a third party serve as Scottsdale President and Treasurer who had no ownership interest in Scottsdale. After the mortgages were purchased by Scottsdale it is alleged that Visone arranged to purchase the condominiums oupon which the mortgages had been recorded and to have a separate realty trust formed to hold title to the condominiums. It was alleged that Visone had a 59% beneficial interest in realty trust in the name of T.C. Nominee Trust. Allegedly, an FCM employee managed the condos and deposited the revenues generated from the condos into a bank account in the name of Sandkey. Payments were made from Sandkey's bank account to Visone's parents. The mortgages and condos were used by Visone as collateral for several personal loans totalling about Two Million Dollars. In October, 2000 the condos were sold for about Two Million Dollars and $4,000 of the

sales proceeds went to pay a mortgage for a property in Florida in the name of Visone's father.  It is further alleged that sometime after October, 2000 Visone claimed an ownership interest in the property.

The indictment goes on to allege that Visone instructed FCM's accountants that a loan had been made to Scottsdale by FCM on February 28, 1996.  It is also alleged that Visone did not inform the accountants that he had caused FCM to transfer the $517,000 into his personal account to cover the $517,000 used to purchase the mortgages in Scottsdale's name.   In June, 1997 Visone allegedly instructed FCM's accountants to write off the loan to Scottsdale as an uncollectible debt.

In the superceding indictment, the allegations relating to the Two Million Dollar loans prior to 1995; the Complaint for Paternity and the allegations relating to Visone transferring a signification portion of his assets and misrepresenting his income, as well as other allegations were not included.

The allegations relating to the checks from FCM and the payment of personal expenses are set forth in Count I of the superceding.  Count I further alleges that  when Visone purchased the mortgages on the 26 condominiums and he had insufficient funds to cover a $517,000 cashier's check uused in the purchase.  It is further alleged that the mortgages were bought in the name of Scottsdale Investment and the advance of $517,000 from FCM was recorded as a loan to Scottsdale.  In June of 1997, the loan was written off by FCM.

 Count II of the superceding indictment  realleges and incorporates all of the allegations contained in Count I. (paragraphs 1 through 14.  Paragraph 14 contains the charging language.,

## COUNT I AND COUNT II OF THE SUPERCEDING INDICTMENT ARE DUPLICITOUS

Duplicity is "the joining in a single count of two or more distinct and separate offenses". 1. Charles A. Wright, Federal Practice and Procedure §142 at 469; See *United States v. Martinez Canas*, 595 F.2d 73, 78 (1st Cir. 1979) "The prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Valerio*, 48 F.3d 58, 63 (1st Cir. 1995).

By realleging and incorporating the allegations contained in Count 1 in the first paragraph of Count 2 the grand jury has clearly charged two offenses in one count. . In the superceding indictment Visone is charged with the same crime in both Counts I and II. Count I charges him with filing a false return in the year 1996 yet charges that a portion of the income not reported on his 1996 return was received in 1997. Count II charges him with filing a false return in both 1996 and 1997. (See paragraph 15). Count II also contain allegations that he filed a false return for 1997 but the jury could find that the government proved its case with respect to 1996 but did not prove its case with respect to the 1997 year yet still convict on both Counts I and II. There is no question that the facts underlying each year were intended to constitute separate counts and that they could not be merged for the purpose of charging in a single count two or more

distinct and separate offenses.   It is clear that the filing for each year constitutes a separate offense under 26 U.S.C. §7206(1)

Count I is duplicitous because it charges Visone with having received income in 1996 which if proved as set forth in the indictment would be income in 1997.  Count I alleges in paragraph 9 that Visone caused FCM to transfer $517,000 to his personal bank account.  This advance was documented on the books of FCM as a loan to Scottsdale (See paragraph 11).  Scottsdale Investments did in fact take title to the mortgages (See paragraph 10).  In June 1997 Visone allegedly instructed FCM's accountants to write off the loan to Scottsdale (See paragraph 12).

Business bad debts can be deducted to the extent of their worthlessness at any time that they become partly or totally worthless and they generally can be deducted from gross income.  Internal Revenue Code §166.  In this case, the business bad debt was allegedly written off in 1997.  At the time that the debt is written off Visone (Scottsdale) would be charged with receiving income from the discharge of indebtedness See IRC §108.  There are exceptions to §108 one of which is that if a taxpayer is insolvent he would not be charged with receiving income.  If Visone was insolvent (that is his liabilities exceeded his assets by $517,000 in 1997) he would not be charged with receiving any income.  Further, if his liabilities exceeded his assets by $200,000, $200,000 would be excluded under the insolvency exception.  The indictment contains no allegations with respect to Visone's status and states no reason why he could be charged with receiving income in 1996 when the loan was written off in 1997.   If he were chargeable with the receipt of income it would be in 1997 at the time the loan is written off.

Both Counts I and II charge Visone with receiving income in 1996 and 1997. Thus a jury could find that he did not report all of his income on his 1996 return and convict him on Counts I and II even if they found he reported all income received in 1997. Likewise a jury could find that he did not report all of his income on his 1997 return and convict him on Counts I and II even if they find he reported all income received in 1996. This result is unacceptable since it would be impossible to ascertain whether the jury had unanimously agreed on the violation.

## COUNT I AND COUNT II OF THE SUPERCEDING INDICTMENT ARE MULTIPLICITOUS

An indictment is multiplicitous if it charges the same crime in two counts. See *United States v. Handakas,* 286 F.3d 92, 97 (2d Cir. 2002), overruled in part on other grounds, *United States v. Rybicki,* 354 F.3d 124 (2d Cir. 2003) (in banc).

In this case the indictment is not only duplicitous as stated above, but also multiplicitous. It not only joins in a single count two or more distinct and separate offenses, but it charges the same offense in twol counts. The grand jury incorporated all allegations in Count 1 including the charging paragraph in Count 2. This is improper. Arguably a grand jury could incorporate factual paragraphs, if the facts are relevant, in a second count, but it can not charge the same violation in two counts. In this case, the danger is that Visone, if convicted, may be given multiple sentences for the same offense conduct and subjected to multiple punishments or increased punishment for the same conduct. Further, based on this indictment the government could possible argue under the sentencing guidelines that the amount of tax loss is increased based on the year to which a particular amount of unreported income is assigned.

THE SUPERCEDING INDICTMENT SHOULD BE DISMISSED
PURSUANT TO 18 U.S.C. §3061 (b)

18 U.S.C. §3161(b) provides, in relevant part:

> "Any … indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

In this case, a one-count indictment charging Visone with a violation of 26 U.S.C. 7206(1) for the year 1996 was returned on April 14, 2004. On October 16, 2004 a summons was issued to Anthony Visone for his appearance and arraignment. On April 26, 2004 Visone appeared before the Magistrate and entered in plea of not guilty. On August 25, 2004 a superceding indictment in two counts was returned against Anthony Visone. This was approximately four months after the initial indictment and summons. Count I of the superceding indictment contains the same charge as appears in Count I of the original indictment[2]. While the First Circuit has held that a superceding indictment containing charges identical to those in the original indictment is not subject to the 30-day limit. See *United States v. Mitchell* 723 F2d, 1044-45 (1St. Cir. 1983). This superceding indictment while containing charges identical to those in the original indictment, the charges are apparently not based on identical facts and therefore should be subject to the 30-day limit. The superceding indictment does contain an additional count, however, as set forth in the preceding arguments both counts charge the same violation – filing a false return for 1966.

Further, it is submitted that the superceding indictment merely "gilds" the initial charge. See *United States v. Bailey* 111 F3d 1229, 1236 (5th Cir. 1997). In the present

---

[2] As set forth in the Statement of Factual Allegations most of the irrelevant, improper and prejudicial language was eliminated from the superceding indictment.

case the superceding indictment "cleans up" the initial charges.  The initial indictment contained factual allegations that related to other tax years, irrelevant and prejudicial references to a paternity suit; irrelevant and prejudicial references to submitted false information at some unspecified time to the Massachusetts courts;  statements of testimony as to conversations between Visone and his accountants at unspecified times and a re-writing of the indictment with respect to the mortgage purchases and the sale of the mortgages and condos.  The defendant submits that there is no reasonable explanation for the difference in allegations contained in the indictment and superceding indictment except to cover up improper conduct before the Grand Jury.  The delay of four months in this case is sufficient to warrant dismissal under the Speedy Trial Act.  See *United States v. Gomez-Olmeda,* 296 F. Supp. 2d 71, 77-81 (D.P.R. 203); *Untied States v. Martinez,* 268 F. Supp. 2d 70 (D.Mass. 2003).

### COUNT I OF THE SUPERCEDING INDICMENT SHOULD BE DISMISSED BECAUSE IT WAS FILED AFTER THE LIMITATIONS PERIOD HAD EXPIRED

Count I of the superceding indictment was returned on August 25, 2004 more than six years after October 16, 1997 when the original 1996 return was filed by the defendant.  It is expected the government will argue that Count I was timely filed since the original indictment was returned on April 14, 2004.  However, as stated above, the charge in Count I of the superceding indictment differs significantly from the factual allegations contained in the original indictment.  Thus, it is in fact a new and different charge filed after the expiration of the limitations period.

### THE SUPERCEDING INDICTMENT SHOULD BE DISMISSED BECAUSE OF MISCONDUCT OCCURRING BEFORE THE GRAND JURY

The original indictment in this case contained the following allegations, among others:

1. That at some unspecified time but prior to 1996 Visone had taken over Two Million Dollars from FCM [which he had characterized as "loans"].

2. That FCM's accountants at some unspecified time had advised Visone that he should repay these amounts. And further warned at some unspecified time that if he did not begin repayment the Internal Revenue Service would deem the amounts to be dividend income and Visone would be required to pay significant federal taxes on the amounts he had *taken* from FCM. [emphasis added].

These allegations are unspecified as to when they occurred other than that it is alleged that they occurred prior to January 6, 1995. They are not relevant to the issue as to whether Visone underreported his income on his 1996 return. Since the allegations do not relate to 1996 the evidence should not have been presented to the Grand Jury. The only purpose in presenting said evidence would be to prejudice Visone. The language contained in paragraph 3 clearly implies that the Grand Jury was informed that the Two Million Dollars had been improperly taken in order for Visone to avoid paying significant federal taxes in connection with prior years. The presentation of this evidence for that purpose is improper. The grand jury should have been told that the issue was whether his 1996 return was accurate. The grand jury obviously considered this information relevant to its determination of probable cause since it included the allegations in the indictment.

The original indictment goes on to state that a complaint for paternity was filed against Visone in January of 1995 and that during the pendency of the paternity case Visone transferred a significant portion of his assets to other entities and that he misrepresented his income to the Probate Court.  Such allegations have no relationship to the charge of filing a false return in 1996.  The only purpose such evidence would have been presented to a Grand Jury would be to prejudice the defendant to bolster the government's case.  The original indictment further alleged that Visone purchased mortgages for $517,000 using a cashier's check drawn on his personal bank account.  It stated that he received a 59% interest in the mortgages and his associates received a 41% interest.  It stated that he caused the mortgages to be conveyed to Scottsdale Investment, Inc. at or near the time of closing.  The original indictment goes on to allege that Visone arranged to purchase the condos which were secured by the mortgages previously purchased and that they arranged to have a separate realty trust formed to hold title to the condos.  The superceding indictment eliminated the allegations that Visone received a 59% interest in the mortgages and a 59% interest in the condominiums.  It was further alleged in the original indictment that Visone used the mortgages and condos as collateral for personal loans at an unspecified time.  It also alleged that the condos were sold for Two Million Dollars in October, 2000.  These allegations relating to events that occurred subsequent to 1996 have no evidentiary value as to whether Visone correctly reported his total income received in 1996.  The purpose of introducing this evidence before the Grand Jury was to prejudice the defendant in the eyes of the Grand Jury.

These improper and prejudicial allegations were eliminated from the allegations contained in the superceding indictment.  However, such allegations even though

eliminated from the indictment seriously prejudice the defendant in the eyes of the Grand Jury and allowed the indictment to be returned based on improper and prejudicial evidence.

## CONCLUSION

For the above-stated reasons the defendant requests that the superceding indictment be dismissed.

                Respectfully submitted,
                Anthony Visone,
                By his attorney,


                /s/ _Albert F. Cullen, Jr._
                Albert F. Cullen, Jr. BBO #107900
                30 Massachusetts Avenue
                North Andover, MA  01845
                (781-794-5658)