UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 04-10123 (DPW) |
| v.                                           ) | Judge Douglas P. Woodlock |
| ) | |
| ANTHONY VISONE                  ) | |
|     Defendant                              ) | |
| ) | |
| _____ ) | |

_____

BRIEF OF THE UNITED STATES

on

LEGAL ISSUES SURROUNDING DIVERSIONS
OF COMPANY FUNDS TO A SHAREHOLDER

_____

ROD ROSENSTEIN
Deputy Assistant Attorney General

DEL WRIGHT, JR.
DIANA BEINART
Trial Attorneys
U.S. Department of Justice

TABLE OF CONTENTS

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Brief Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT OF THE CASE

On April 14, 2005, a federal grand jury sitting in Boston, Massachusetts returned a one-count indictment charging Defendant Visone with willfully filing a false tax return, in violation of 26 U.S.C. § 7206(1), for tax year 1997. On August 25, 2004, the same grand jury returned a superseding indictment charging Defendant Visone with an additional count of willfully filing a false return, in violation of 26 U.S.C. § 7206(1), for tax year 1998. Trial in this matter is set to commence on July 11, 2005.

## STATEMENT OF FACTS

The Government expects that, in its case in chief, it will establish the following facts: Defendant Visone was the sole shareholder of First City Management, Inc., a group of consolidated businesses that included auto dealerships in multiple states, leasing companies and financial services companies incident to auto sales (collectively, "FCM"). Defendant Visone diverted over $1.5 million dollars from FCM to his personal use in 1996 and 1997. Generally, in the event that FCM's accountants discovered the diversions, Defendant Visone instructed them to record the diverted funds as loans to shareholder.

In 1996, $517,000 was transferred from an FCM account to Defendant Visone's personal bank account. Defendant Visone used the $517,000 to enter into a real estate transaction, and directed FCM's accountants to characterize the funds as a loan to a nominee entity unrelated to FCM. Defendant Visone later ordered the accountants to write the loan off as a bad debt.

Also beginning in 1996, Defendant Visone caused FCM to issue him checks for his personal use in place of salary. In 1995, Defendant Visone reported a salary in excess of $150,000. In 1996, while in the midst of a paternity suit, Defendant Visone reduced his salary

from FCM to approximately $20,000, and, concomitant with his reduced salary, caused FCM regularly to issue him checks in various amounts, usually $3,000 or $4,000, along with his reduced salary check. During 1996, the total amount of these checks was approximately $148,000. Defendant Visone generally deposited these checks into his personal bank account along with his salary from FCM, and used funds from that bank account to pay his personal expenses. In addition during 1996, Defendant Visone caused FCM to pay numerous other personal expenses on his behalf, such as mortgage payments, car payments and payments for his housekeeper.

Defendant Visone did not include as income the amounts of the checks made payable to him and drawn from FCM on his 1996 U.S. Individual Income Tax Return. In addition, Defendant Visone also failed to include the value of the expenses paid for his personal benefit directly by FCM on his 1996 U.S. Individual Income Tax Return.

Late in 1996, FCM entered into a contract for the sale of a portfolio of auto leases. The purchase price was approximately $2.3 million, to be paid in cash and through promissory notes. Sometime later, the purchaser and Defendant Visone renegotiated the sale, and the new terms called for Defendant Visone to return some promissory notes to the purchaser in exchange for an immediate payment of $743,569 to be followed by another payment at a later date. Defendant Visone instructed the purchaser to pay the $743,569 to an account controlled by Defendant Visone unrelated to FCM. These funds were used to pay a mortgage obligation for the benefit of Defendant Visone.

In addition, throughout 1997 Defendant Visone caused FCM to issue over 30 checks made payable to him in various amounts. The total amount of these 1997 checks was approximately $130,500. Defendant Visone reported neither the $130,500 nor the $743,569

related to the sale of the lease portfolio as income on his 1997 U.S. Individual Income Tax Return.

## STATEMENT OF THE LAW

The elements of an offense under 26 U.S.C. § 7206(1) are:

(1) that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true;

(2) that the tax return was false as to a material matter;

(3) that the defendant signed the return willfully and knowing it was false; and

(4) that the return contained a written declaration that it was made under the penalty of perjury.

United States v. Boulerice, 325 F.3d 75 (1st Cir. 2003); United States v. LaSpina, 299 F.3d 165, 179 (2nd Cir. 2002) (quoting United States v. Pirro, 212 F.3d 86, 89 (2nd Cir. 2000) (quoting United States v. Peters, 153 F.3d 445, 461 (7th Cir. 1998))); see also United States v. Scholl, 166 F.3d 964, 979 (9th Cir. 1999).

## BRIEF SUMMARY OF THE ARGUMENTS

The Government contends that the funds Defendant Visone diverted from FCM should be considered income to him. See Davis v. United States, 226 F.2d 331, 334 (6th Cir. 1955); United States v. Miller, 545 F.2d 1204, 1215 (9th Cir. 1976); United States v. Goldberg, 330 F.2d 30, 38 (3rd Cir. 1964); Hartman v. United States, 245 F.2d 349, 352-353 (8th Cir. 1957). United States v. Williams, 875 F.2d 846 (11th Cir 1989). Because those funds were not reported on Defendant Visone's tax returns for 1996 and 1997, those tax returns were materially false.

The Defendant may contend that the funds should be deemed a return of capital.1/ See, e.g., United States v. D'Agostino, 145 F.3d 69 (2nd Cir. 1998). Under the D'Agostino rule (referred to sometimes as the "no earnings and profits, no income" rule), as a so-called "constructive distribution", the diverted funds would be taxable as ordinary income only if FCM had "earnings and profits" ("E&P").2/ The defense is expected to contend that 1) FCM had no E&P, and that 2) Defendant Visone's basis in his FCM shares exceeded the amount diverted. Under its contentions, so long as the diverted funds did not exceed Defendant Visone's tax basis in his FCM shares, the diverted funds would be considered a non-taxable return of capital.

It appears that this is an issue of first impression in the First Circuit. However, the First Circuit has cited as authority both Davis and Miller. See, e.g., United States v. Taglianetti, 398 F.2d 558 (1st Cir. 1968); United States v. Drape, 668 F.2d 22 (1st Cir. 1981).

The majority of reported diversion of income case were charged as tax evasion, in violation of 26 U.S.C. § 7201. To support a § 7201 conviction, the government must prove the existence of a tax deficiency, an affirmative act of attempted evasion of tax, and willfulness. See Sansone v. United States, 380 U.S. 343, 351 (1965). The issue that arose in D'Agostino was whether there was, in fact, a tax deficiency. In D'Agostino, the Second Circuit held that if the diverted corporate funds could have been treated as a return of capital or repayment of a loan (emphasis added), then there could be no tax deficiency as a matter of law. Therefore, the government could not satisfy the tax deficiency element of Section 7201.

---

1/     The defense may contend that the diverted funds were a loan to shareholder. This brief will only briefly address that defense, incident to its discussion of the issues.

2/     This brief will assume, arguendo, that FCM had no E&P. The Government does not concede that FCM had no current or accumulated E&P.

Numerous other federal Circuit Courts, when faced with the same issue, rejected D'Agostino's reasoning and have generally held that in a criminal prosecution of a shareholder who has diverted corporate funds, as in any criminal tax case, the Government establishes a prima facie case by proving the defendant's receipt of funds having the appearance of income. See United States v. Fogg, 652 F.2d 551, 553-55 (5th Cir. 1981); Miller, 545 F.2d at 1215 n.13; United States v. Lacob, 416 F.2d 756, 760 (7th Cir. 1969); United States v. Garcia, 412 F.2d 999, 1001 (10th Cir. 1969). The defendant then has the burden of going forward with evidence that the transaction was originally treated as a loan or other evidence tending to negate a tax deficiency. See Miller, 545 F.2d at 1215; United States v. Bok, 156 F.3d 157, 163-64 (2nd Cir. 1998); United States v. Cruz, 698 F.2d 1148, 1152 (11th Cir. 1983); Leonard, 524 F.2d at 1083; Davis v. United States, 226 F.2d at 336. The question of whether the diverted funds constitute a loan repayment depends on whether defendant received the funds with a genuine obligation and intent to repay, which is a question of fact for the jury to decide. See Estate of Chism v. Commissioner, 322 F.2d 956, 959-60 (9th Cir. 1963); Gendelman v. United States, 191 F.2d 993, 996 (9th Cir. 1951); Tollefsen v. Commissioner, 431 F.2d 511, 513 (2nd Cir. 1970).

In the present case, Defendant Visone is charged with filing false tax returns, in violation of 26 U.S.C. § 7206(1). While a tax deficiency is not an element of § 7206(1), the tax treatment of the diverted funds is expected to arise in determining whether Defendant Visone's tax returns were materially false.

In the event that the D'Agostino rule was adopted by this Court, the Government would contend that the rule should not be applied in this case. The Second Circuit's opinion in D'Agostino made clear that the "no earnings and profits, no income" rule would not necessarily

apply in a case of unlawful diversion, such as embezzlement, theft, a violation of corporate law, or an attempt to defraud third party creditors." 145 F.3d at 73.  The Government believes it could satisfy such a standard, though this brief will not discuss this aspect of D'Agostino.

### ARGUMENT

In a case where a corporation has no earnings and profits, and therefore cannot pay a dividend, and there is evidence supporting the inference that the taxpayer intended to treat unrecorded diversions of corporate funds as compensation or another form of ordinary income, there is no good reason to automatically treat the diversions as constructive distributions.  Moreover, no statute provides that, in the absence of earnings and profits, a diversion of corporate funds must be treated as a constructive distribution rather than compensation or some other form of income.

Indeed, where, as here, a shareholder is also an employee of his corporation and the records of the corporation contain no indication that a distribution "with respect to [the corporation's] stock" (see 26 U.S.C. 301(a)) was intended, diverted funds may be a "distribution" with respect to employment, such as additional salary, commissions or illicit bonuses.  See Davis v. United States, 226 F. 2d at 334; United States v. Miller, 545 F.2d at 1215.

Ignoring the other potential characterizations of the diverted funds and automatically treating a diversion as a constructive distribution with respect to the corporation's stock simply promotes tax evasion by controlling shareholders of closely held businesses.  There is ample reason to conclude that a defendant who, with intent to evade tax, diverted corporate funds and failed to record a reduction in his capital account had no intention of complying with the corporate distribution rules and intended only to give himself extra, untaxed compensation.

Automatically recasting such a diversion in this manner would only invite fraud. See, e.g., United States v. Williams, 875 F.2d at 849-852; United States v. Miller, 545 F. 2d at 1212-1216; United States v. Goldberg, 330 F. 2d 30, 38 (3rd Cir. 1964); Hartman v. United States, 245 F. 2d 349, 352-353 (8th Cir. 1957); Davis v. United States, 226 F. 2d at 334-336.

In United States v. Miller, 545 F.2d at 1214 (footnote omitted), the Ninth Circuit gave cogent reasons for not automatically applying D'Agostino's constructive distribution rules in criminal cases arising out of the diversion of corporate funds:

> It does not matter that amount could have somehow been made non-taxable if the taxpayer had proceeded on a different course. * * * If constructive distribution rules were automatically applied, an anomalous situation would result. A taxpayer who diverted funds from his close corporation when it was in the midst of financial difficulty and had no earnings and profits would be immune from punishment (to the extent of the basis of his stock) for failure to report such sums as income; while that very same taxpayer would be convicted if the corporation had experienced a successful year and had earnings and profits. Such a result would constitute an extreme example of form over substance. In addition, it would sanction the diversion and non-reporting of corporate and personal funds, contrary to the intent and express language of the statutes. We therefore conclude that whether diverted funds constitute constructive corporate distributions depends on the factual circum-

stances involved in each case under consideration.

The Miller court then went on to hold that diverted funds would constitute a return of capital only if there was some demonstration on the part of the taxpayer or his corporation that distributions were intended to be such a return.  545 F.2d at 1215.  The court pointed out that, "[t]o hold otherwise would be to permit the taxpayer to divert such funds and if not caught, to later pay out another return of capital; or if caught, to avoid conviction by raising the defense that the sums were a return of capital and hence non-taxable." Id.; accord United States v. Williams, 875 F.2d at 851; United States v. Santarelli, 778 F.2d 609, 617 (11th Cir. 1985).

In Williams, 875 F.2d at 851 (quoting United States v. Cruz, 698 F.2d 1148, 1151-1152 (11th Cir. 1983)), the court "refuse[d] to condone a taxpayer's wait-and-see 'gamble.'" See also Santarelli, 778 F.2d at 617 (defendant could not avoid prosecution for filing a false return "simply by changing his accounting method on the eve of trial.")  "A contrary rule would make a mockery of the federal income tax system." Id.

In D'Agostino, the Second Circuit held that the government failed to establish that the funds diverted by defendants from their corporations constituted income and thus failed to prove a tax deficiency, one of the elements of attempted evasion of tax under 26 U.S.C. 7201. 145 F.3d 69 (2nd Cir. 1998); citing Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Helmsley, 941 F.2d 71, 83 (2nd Cir. 1991).  In holding that the funds did not constitute income, the Second Circuit pointed out that the government did not prove that defendants' corporations had earnings and profits, and the Second Circuit stated that under their interpretation of Second Circuit precedent, "corporate funds lawfully diverted by a shareholder constitute taxable income only to the extent that the corporation had earnings and profits during the tax year in which the

diversion occurred." D'Agostino 145 F.3d at 72. The Second Circuit further stated:

> Under the "no earnings and profits, no income" rule, diverted corporate funds are treated as a constructive dividend to the shareholder to the extent the corporation had earnings and profits. To the extent that a corporation's distribution to a shareholder is <u>not</u> made out of earnings and profits, I.R.C. § 301(c)(2) treats the distribution as a return of capital to the shareholder that is applied against and made in reduction of the adjusted basis of the shareholder's stock; or, if applicable, the distribution is treated as a return of a loan. <u>Id</u>.

The Second Circuit concluded that because the company in the case owed its shareholders, the D'Agostinos, more than the amount they diverted, the corporation, in effect, owed the diverted funds to the defendants, and the funds could not constitute taxable income.

The Second Circuit's analysis is flawed in several respects. As stated above, no statute provides that a diversion of corporate funds must be treated as a return of capital or repayment of a loan rather than income. Specifically, there is no statutory authority for the treatment of corporate diversions as loan repayments.

Section 301(c) of the Internal Revenue Code (26 U.S.C.), which was cited in <u>D'Agostino</u>, neither states nor implies that a diversion of corporate funds must be treated as a constructive distribution. The statute merely sets forth how distributions made by a corporation to a shareholder *with respect to the corporation's stock* shall be treated under Section 301(a), and does not authorize treatment of a diversion as repayment of a loan. The statute provides that the portion of a distribution that is not a dividend "shall be applied against and reduce the adjusted

basis of the stock," 26 U.S.C. § 301(c)(2), and that, to the extent the distribution "exceeds the adjusted basis of the stock, [the distribution] shall be treated as gain from the sale or exchange of property," 26 U.S.C. § 301(c)(3). Thus, the statute precludes treatment of a distribution as repayment of a loan.

The Second Circuit's holding that the constructive distribution rules automatically apply to a diversion where a corporation has no earnings and profits conflicts with prior Second Circuit decisions relating to the characterization of such transactions for tax purposes. See United States v. Helmsley, 941 F.2d at 87 (2nd Cir. 1991); Tollefsen v. Commissioner, 431 F.2d 511, 513 (2nd Cir. 1970). In Helmsley, the Second Circuit held that "[a] showing of a deficiency cannot be rebutted by a recalculation based on the selection of the most favorable option, where other equally available options result in a deficiency." 941 F.2d at 87.

In D'Agostino, the defendants were both officers and employees of their company, as well as majority stockholders, and the corporate records contained no indication that a distribution "with respect to [the corporations'] stock" (see 26 U.S.C. 301(a)) was intended. The diverted funds could have been in the nature of additional salary, commissions or illicit bonuses rather than distributions. Yet the Second Circuit concluded that the funds constituted a return of capital or a loan repayment, a calculation clearly "based on the selection of the most favorable option, where other equally available options result in a deficiency." Helmsley 941 F.2d at 87. See Davis v. United States, 226 F. 2d 331, 334 (6th Cir. 1955); United States v. Miller, 545 F.2d 1204, 1215 (9th Cir. 1976). Thus, under Helmsley, it was improper to automatically cast the transactions as constructive distributions or loan repayments.

In Tollefsen, the taxpayers contended that funds withdrawn from a wholly owned

subsidiary of a corporation they owned constituted loans rather than taxable dividends. 431 F.2d at 511-12. Although the withdrawals had been recorded on the corporation's books as loans receivable, the Tax Court held that the funds constituted dividends, since, at the time of the withdrawals, the taxpayer who withdrew the funds did not intend to repay the amounts withdrawn. 431 F.2d at 512. The Second Circuit affirmed, holding that "[t]he determination of whether the withdrawal is a loan or a dividend is a question of fact which a circuit court of appeals cannot alter unless the determination is not supported by substantial evidence" and that the controlling question in the determination "is whether there was an intent to make a loan, i.e., whether repayment was in fact contemplated by the parties." 431 F.2d at 513. Thus, under Second Circuit law, the appropriate characterization of a transaction for tax purposes depends on the actual intent of the parties, a question of fact for the jury or other trier of fact. Accordingly, the Second Circuit's determination that a diversion of corporate funds should be treated as a constructive distribution or repayment of a loan, regardless of whether a distribution was intended, conflicts with that circuit's precedent.

In D'Agostino, the Second Circuit articulated that it relied on DiZenzo v. Commissioner, 348 F.2d 122 (2nd Cir. 1965). That case, however, did not require the diversions to be treated as constructive distributions. In DiZenzo, the Second Circuit addressed several challenges by the taxpayers to a decision of the Tax Court that held them liable for additional taxes on diverted funds. 348 F.2d at 123. The taxpayers argued that the Tax Court should not have treated the entire amount diverted as ordinary income, but should have treated the diversions as a construction distribution. DiZenzo 348 F.2d at 125. The Second Circuit held that the corporate distribution rules should apply to the taxpayers' diversion of corporate funds and remanded the

case to the Tax Court for additional findings as to whether the taxpayers had established that their corporation did not have earnings and profits equal to the amounts diverted. Id. at 125, 127.

In reaching its decision, the Second Circuit stated that "no reason appears why [the diversions] cannot properly be described as 'distribution[s] made by a corporation to its shareholders.'" Id. Thus, DiZenzo clearly contemplates that a diversion need not automatically be treated as a distribution with respect to stock where the evidence demonstrates that a different treatment is more appropriate.

The Second Circuit also relied on United States v. Leonard, 524 F.2d 1076 (2nd Cir. 1975), a criminal case. In its decision, the Leonard Court noted that the defendant argued that under DiZenzo, diverted funds were to be treated as constructive dividends rather than embezzled income, as the government argued. The Court then stated, "Acceptance of this still does Leonard no good unless, as he asserts, [his corporation] had no earnings or profits * * *." 524 F.2d at 1083. Thus, it appears that the Court never squarely ruled on the issue.

In addition, in Leonard the Second Circuit went on to hold that in the prosecution of a criminal tax case, production of "a rather slight amount of evidence by the Government, here the proof of receipt of what are charitably characterized as constructive dividends rather than embezzled funds, may transfer the burden of going forward [with proof of a lack of earnings and profits] to the defendant." Id. (Emphasis added.) The Court then held that the defendant had failed to meet that burden. Thus, there was no need for the Court actually to decide whether diverted funds must be treated as a corporate distribution. The dicta in Leonard should not stand for the proposition that diversions must be treated as constructive distributions with respect to stock.

Despite the reasons supporting the majority rule, the Second Circuit in D'Agostino opined that its interpretation of the DiZenzo rule is better reasoned. The Second Circuit stated that the result of the majority rule "is that the government bears a higher burden of proof in a civil tax collection matter than in a criminal tax evasion prosecution" and that the majority approach effectively eliminates proof of a tax deficiency as an element of tax evasion. D'Agostino 145 F.3d at 73.

However, in a civil tax case, the government generally does not bear the burden of proving anything: the statutory notice in civil tax cases carries with it a presumption of correctness. See Helvering v. Taylor, 293 U.S. 507, 515 (1935); Welch v. Helvering, 290 U.S. 111, 115 (1933); Silverman v. Commissioner, 538 F.2d 927, 930 (2nd Cir. 1976). 3/ Further, under the majority rule with respect to corporate diversions, the government still bears the burden of proving all of the elements of tax evasion, including a tax deficiency, beyond a reasonable doubt. The evidence of criminal intent does not take the place of evidence of a tax deficiency, but merely bears on the question whether the diversion was intended to constitute something other than a corporate distribution: a finder of fact may reasonably find that a defendant's intent to evade is sufficient to establish that the defendant did not intend a distribution with respect to his company's stock. The Second Circuit's approach simply creates a lack of a tax deficiency by changing the essential nature of the transaction after the fact, in conflict with the principle that a transaction must be "given its tax effect in accord with what actually occurred and not in accord

---

3/     We note that in Truesdell v. Commissioner, 89 T.C. 1280, 1295-96 (1987), the Commissioner bore the burden of proving earnings and profits with respect to additional deficiencies asserted by the Commissioner in his answer to the taxpayer's petition for redetermination. Truesdell, 89 T.C. at 1295-1296. Truesdell recognized, however, that the taxpayer bears the burden of proving a lack of earnings and profits with respect to deficiencies determined in the Commissioner's notice of deficiency. 89 T.C. 1295-96.

with what might have occurred." Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 149 (1974); see also United States v. Helmsley, 941 F.2d at 87. Thus, the better rule appears to be the majority rule. 4/

In DiZenzo, the court held that diversions could not be treated as repayments of an obligation of the corporation to the taxpayers where there was no factual support in the record for so treating the payments. 348 F.2d at 125. It follows that the determination whether a diversion constitutes repayment of a loan depends on the intent to treat the repayment as satisfaction of a debt, a question of fact. Thus, the Second Circuit's determination that a diversion may be treated as repayment of a loan merely because of a lack of earnings and profits is in conflict with DiZenzo and Tollefsen, as well as 26 U.S.C. § 301.

## CONCLUSION

---

4/ In D'Agostino, the Second Circuit cited (145 F.3d at 72) Truesdell v. Commissioner, 89 T.C. 1280, 1294-95 (1987), and the Commissioner's acquiescence in that decision. In Truesdell, the Tax Court held that lawful corporate diversions should be treated as constructive distributions in the absence of evidence that the distributions were in the nature of compensation. Truesdell recognizes that diverted funds might be in the nature of something other than a distribution with respect to stock, such as additional compensation. Truesdell, 89 T.C. at 1296, 1300. Similarly, the Action on Decision cited by the Second Circuit, CC-1988-025, 1988 WL 570761, which provides that it "is not to be relied upon or otherwise cited as precedent by taxpayers," states, "Funds diverted to the shareholder of a wholly owned corporation should be regarded as constructive distributions, unless the funds were additional salary or otherwise were received in a nonshareholder capacity." (emphasis added.) In a criminal case, the Government bears the burden of proving that the unrecorded diversions were a form of compensation rather than distributions with respect to stock. Further, the Internal Revenue Service Cumulative Bulletin listing the acquiescence states that "[c]aution should be exercised in extending the application of the decision to a similar case unless the facts and circumstances are substantially the same" and that "[a]cquiescence in a decision means acceptance by the Service of the conclusion reached, and does not necessarily mean acceptance and approval of any or all of the reasons assigned by the Court for its conclusions." 1988-2 Cum. Bull. 1-2. It is quite clear that the government has not agreed to apply the Tax Court's opinion to corporate diversions in criminal tax cases. See Williams, 875 F.2d 846.

For the foregoing reasons, the Government respectfully requests that the Court rule that the "no earnings and profit, no income" rule does not apply and instruct the jury at the close of the case that the Government need not establish the existence of earnings and profits in order for the jury to conclude that the funds received by Defendant Visone from his company should represent taxable income.

Respectfully submitted,

ROD ROSENSTEIN
Assistant U.S. Attorney General


/s/Del Wright Jr.
/s/Diana Beinart
Trial Attorneys
U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was filed electronically with the Court, and notice of the filing, as well as copies, will be available to all parties once filed.

                                  /s/Del Wright Jr.
                                  Trial Attorney
                                  U.S. Department of Justice