UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 04-10123 (DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY VISONE | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTENT
TO OFFER 404(b) EVIDENCE AT TRIAL**

**I. Introduction**

The Defendant, Anthony Visone, is charged with subscribing to false tax returns in violation of 26 U.S.C. Sec. 7206(1). Specifically the Indictment charges that Defendant Visone did willfully subscribe to individual income tax returns for years 1996 and 1997 that he did not believe to be true and correct as to every material matter in that the returns reported total income of $56,319 and $4,887, respectively.

In 1995 and thereafter, Defendant Visone was the defendant in a paternity lawsuit filed against him in the Probate and Family Court Department of the Commonwealth of Massachusetts (the "Paternity Proceeding"). The primary issue in the Paternity Proceeding was the amount Defendant Visone should pay in child support. Both the Defendant Visone and the Plaintiff in the Paternity Proceeding heatedly contested and litigated the issue. The Paternity Proceeding was ultimately settled in 1998. Defendant Visone's tax returns for 1996 and 1997 were never an issue in the Paternity Proceeding. Furthermore the Court in the Paternity Proceeding made no findings in connection with

Defendant Visone's 1996 and 1997 tax returns as they were not the subject matter of that proceeding.

The Government is now seeking to introduce evidence from the Paternity Proceeding which is completely unrelated to this indictment. It appears that the Government is arguing that Judge Dilday's Findings of Fact and Conclusions of Law, should be admissible in this proceeding. Judge Dilday's rulings represent "testimonial" hearsay and are prohibited by the United States Supreme Court's holding in <u>Crawford v. Washington</u>. Furthermore the Government's attempt to bootstrap Judge Dilday's findings into this matter is prohibited by Rules 403 and 404(b) of the Federal Rules of Criminal Procedure.

**II. Judge Dilday's Findings and Conclusions of Law, the Extrinsic Evidence The Government is Seeking To Introduce, Is Barred by <u>Crawford v. Washington</u>**

"The Sixth Amendment's Confrontation Clause provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," *Crawford v. Washington*, 541 U.S. 36, 42 (Sup. Court 2004). One could plausibly read "witnesses against" a defendant to mean those who actually testify at trial, those whose statements are offered at trial, or something in-between, *Id* at 43.

A number of witnesses testified against Defendant Visone at the Paternity Proceeding. The Judge in the Paternity Proceeding relied on the testimony of these witnesses in reaching both her findings and conclusions of law. As such Judge Dilday's Findings and Conclusions of Law, which the Government is seeking to introduce, amount to "testimonial" hearsay. As "testimonial" hearsay Judge Dilday's rulings are prohibited under *Crawford.*.

The text of the Confrontation Clause reflects this focus. It applies to "witnesses" against the accused--in other words, those who "bear testimony". "Testimony," in turn, is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact, *Id* at 51. Various formulations of this core class of "testimonial" statements exist: extrajudicial statements. . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, *Id* at 51. In the present case the Judge's actual Findings and Conclusions at the Paternity Proceeding amount to extrajudicial "testimonial" statements.

Whatever else the term ["testimonial"] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed. Furthermore, "The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace," *Id* at 53.

The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination, *Id* at 53. Defendant Visone would have to be able to cross-examine the witness in connection with the extrinsic statements the Government is seeking to offer under Rule 404(b). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine," *Id* at 59. In the present case the witnesses from the Paternity Proceeding are available. Also Defendant Visone has

had no opportunity to examine the witnesses in connection with either this matter or his 1996 and 1997 tax returns

The fact that the statements being offered are another Court's findings and conclusions does not exempt them from the Confrontation Clause. "The Framers would be astounded to learn that ex parte testimony could be admitted against a criminal defendant because it was elicited by a "neutral" government officer," *Id* at 66. Neither does the fact that the statements may be reliable because of the source exempt them from cross-examination. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes," *Id* at 62.

Finally, "That inculpating statements are given in a testimonial setting is not an antidote to the confrontation problem, but rather the trigger that makes the Clause's demands most urgent. It is not enough to point out that most of the usual safeguards of the adversary process attend the statement, when the single safeguard missing is the one the Confrontation Clause demands," *Id* at 65. For these reasons Judge Dilday's Findings and Conclusions of law represent "testimonial" hearsay which is prohibited by Crawford v. Washington.

## III. Extrinsic Act Evidence Subject To Two-Prong Test Under Rules 404(b) and Rule 403.

"The First Circuit is no stranger to the problems surrounding the admissability of extrinsic act evidence under Rule 404(b)," *US v. Aguilar-Aranceta*, 58 F. 3d 796, 798 (1st Cir. 1995). "We have adopted a two-part test to determine the admissability of such evidence. First, the trial judge must determine whether the evidence in question is

offered for any purpose other than solely to prove the defendant had a propensity to commit the crime in question. That is, the judge must determine whether the evidence has some "special" probative value. Prior bad acts may be "specially relevant" if they are probative of motive, opportunity, intent, preparation, plan or knowledge, identity, or absence of mistake or accident. If the judge is satisfied that the proffered evidence has "special relevance," the focus shifts to the second part of the test, which applies Rule 403 to determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice," *Id* at 798.

In applying the "specially relevant" prong of the test, The *Aguilar-Aranceta* Court cautioned, "There is, however, a danger that the supposed inferences to knowledge [of a criminal act] will be obscured by the forbidden inference to propensity, particularly in cases in which the theory of knowledge is the probability that the defendant would have obtained knowledge in the course of repetitive involvement in criminal conduct," *Id* at 799. This is exactly what the Government is using the Paternity Proceeding evidence to show. The Government is attempting to demonstrate that Defendant filed false statements in the Paternity Proceeding. Defendant Visone then repeated this criminal conduct in connection with his 1996 and 1997 tax returns. This inference to propensity is forbidden under Rule 404(b).

"It is, therefore, important to explain what inferences are impermissible," *Id* at 799. "It is impermissible to suggest that a defendant's prior conviction for possession of cocaine somehow makes her more likely to have acted in a similar manner in the context of the present possession charges. Similarly, a prosecutor may not argue that the

defendant's prior conviction for a drug offense demonstrates her propensity for involvement in drug trafficking," *Id* at 799.

In the present case the Government's motion asserts that Defendant Visone's alleged false statements in the Paternity Proceeding led to his false statements in his 1996 and 1997 tax returns. The evidence will not show this to be true.  Under *Aguilar-Araneta* it is impermissible for the Government to argue that his alleged false statements in the Paternity Proceeding somehow makes him more likely to have acted in a similar manner in the context of the present charges.  The Government may not argue that the Defendant's prior practices demonstrate his propensity for making false statements.

## IV.  Use of 404(b) Evidence To Prove Motive

The Government in its motion in support of the introduction of the Paternity Proceeding evidence states that said evidence provides a "clear" motive.  "When prior bad act evidence is offered to prove a motive for the crime , courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury," *US v. Varoudakis*, 233 F.3d 113, 120.  In *Varoudakis* the defendant was charged with arson of his nightclub/restaurant.  The government argued that the defendant's commission of a car fire in response to financial stress made it more likely that the defendant committed the restaurant arson in response to financial stress," *Id* at 120.  The Court in ruling the evidence of a previous uncharged arson was inadmissible stated, "This is the type of character and propensity evidence prohibited by Rule 404(b)," *Id* at 120.

"Unlike knowledge and intent, motive is not an element of the crime that the government must prove.  For that reason proof of motive must be offered to show some

other element, for example, that the crime was committed, the identity of the accused or the accused's requisite mental state.  That is the problem here.  As proof of motive, the car fire testimony is offered as circumstantial evidence that Varoudakis committed the Destinations fire.  It involves an inference of propensity as a necessary link in the inferential chain.  Contrast this forbidden inference with the permissible inference to be drawn in a case which the prior bad act--say, a botched robbery by the defendant that was frustrated by the ineptitude of his cohort--provide the motive for the defendant's subsequent assault on his cohort.  There the prior bad act would provide circumstantial evidence of the commission of the assault without the involvement of any propensity inference," *Id* at 120.

In the present case, like *Varoudakis*, the Government is using the Paternity Proceeding as circumstantial evidence that Defendant Visone committed the offenses alleged in the present matter.  The Government is attempting to use the Paternity Proceeding to draw an inference of propensity.  That is the Defendant Visone was willing to falsify financial statements in the Paternity Proceeding therefore he would be willing to falsify his tax returns in the present matter.  The use of this evidence for this purpose is prohibited under Rule 404(b) as set forth in *Varoudakis*.

**V.  Use of 404(b) Evidence to Prove Knowledge or Intent**

The Government also asserts that the Paternity Proceeding is admissible to prove knowledge and intent.  In *United States v. Garcia -Rosa*, 876 F.2d 209 (1st Cir. 1989) the government attempted to use 404(b) evidence to impute knowledge to the defendants.  Specifically, one defendant lent a co-defendant money.  The defendant lending the money had a subsequent conviction for possession of cocaine.  The government attempted to

show that the defendant's subsequent possession conviction proved that the defendant knew his previous loan was for the purchase of drugs. In holding the subsequent possession charge was inadmissible under 404(b) the Court held, "We fail to understand how the jury could make the inference that it requires--that possession of cocaine at one point subsequent implies possession of cocaine nineteen months earlier--without relying on an assessment of the defendant's character. Even if the bad act in question *had occurred prior* (emphasis added) to the incident for which the defendant was charged, we think the inference that the defendant's familiarity with cocaine would imply why his co-defendant sought to borrow money from him, is so attenuated that this inferential chain cannot justify the admission of the evidence under Rule 404(b), *Id* at 221. Defendant Visone's 1996 and 1997 tax returns were not part of the Paternity Proceeding. Thereby To assert that Defendant Visone knew or intended to make false statements in his 1996 and 1997 tax returns as a result of a 1995 paternity claim is also so attenuated that the inferential chain cannot justify the admission of the evidence under Rule 404(b). Defendant's knowledge or intent with respect to said tax returns was totally unrelated to the Paternity Proceeding. "We urge the government and the district court to be careful as to the admission of [extrinsic act evidence]. While admissible in some circumstances, it is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the 'special' ground for doing so, " *Id* at 221. In the present case the Government has failed to articulate with suitable precision the "special" grounds necessary to admit the Paternity Proceeding evidence under Rule 404(b).

**VI.  The Paternity Proceeding Evidence Is Overly Prejudicial Under Rule 403**

Even if the Court were to conclude the Paternity Proceeding evidence is somehow admissible under Rule 404(b) the evidence would not be admissible under Rule 403. Under the two prong test set forth above in addition to having "special relevance" the probative value of the evidence must substantially outweigh the danger of unfair prejudice.  Referring to *United States v. Aguilar-Araneta* cited above the Court held that the defendant's prior conviction for possession of cocaine was inadmissible under Rule 403 in *Aguilar-Araneta's* present trial for possession of cocaine with intent to distribute. "The tenets of Rule 403 balancing are familiar and often quoted, "If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially over balances any probative value, then the evidence must be excluded,"  *Id* at 800.  "Against the marginal relevance of the prior conviction evidence, we weigh the danger that it unfairly prejudiced the jury.  Here, we cannot escape the conclusion that the most powerful inference that the jury was likely to make from the prior conviction is also the forbidden one: that because she was previously convicted under nearly identical circumstances, she must be guilty here.  The specter of impermissible character evidence is likely to have significantly overshadowed any legitimate probative value,"  *Id* at 801.  In the present matter the Government is seeking to introduce the evidence from the Paternity Proceeding for the exact reason that Rule 403 prohibits it's introduction.  Specifically, because Defendant Visone allegedly made false financial statements at the Paternity Proceeding, Defendant Visone must be guilty of making false statements in the unrelated present matter.

"The gravity of the unfair prejudice is even more apparent when one considers that the prior conviction was not merely one part of the government's attempt to establish Aguilar-Aranceta's state of mind. It was the entire case," *Id* at 801. Similarly, the Government in the present case is relying solely and entirely on the evidence from the Paternity Proceeding to establish Defendant's Visone's state of mind. The marginal probative value of the evidence coupled with the scarcity of the other evidence relating to the Defendant's state of mind, creates an unacceptable risk that the jury would assume that the Defendant had a propensity for making false statements and convict on that basis alone, *Id* at 801.

In addition to unfair prejudice the Court must also examine whether admission of the extrinsic evidence will create a confusion of the issues and mislead the jury. The tax returns in question were filed separate from the Paternity Proceeding. One issue has nothing to do with the other. As such the jury can only be confused by the introduction of the Paternity Proceeding. Also introduction of the Paternity Proceeding will only mislead the jury. To attempt to show that the Defendant Visone made false statements in connection with child support will mislead the jury into thinking that he makes false statements with regard to other amounts he may owe. This is also impermissible under Rule 403.

## VII. Paternity Proceeding Evidence Not Intrinsic Act Evidence

The Government also argues that the Paternity proceeding should be admissible because the evidence is intrinsic and therefore not governed by Rule 404(b). The Government relies on cases that are inapplicable to the present matter. In *United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, the acts in question, threats, were not considered

extrinsic and thereby subject to Rule 404(b). The threats were not considered extrinsic because the defendant ultimately did what he threatened to do. That is he threatened to take his daughter from his wife and he later in fact kidnapped his daughter. In the present case the civil Paternity Proceeding was completely unrelated to Defendant Visone's criminal charges in connection with filing of taxes a year and two years later, respectively.

In *United States v. Carboni*, 204 F.3d 39, the defendant was charged with making false statements to obtain loans. The other evidence in that case involved conduct that enabled the defendant to make false statements on the loan applications. (Defendant reported fictional inventory and the loans were based in part on the amount of existing inventory.) Again the uncharged conduct was part and parcel of the crime with which the defendant was charged. Again, in the present case there is no connection between a civil Paternity suit that was later settled and the alleged criminal activity of filing of false tax returns in subsequent years.

The Government also cites *United States v. McGauley, 279 F.3d 62 (1st Cir. 2002)*. In *Mcgauley* the defendant was charged with fraudulently obtaining refund checks from retail stores. The uncharged acts were 217 refund checks that were not charged in the indictment. Defendant Visone's 1996 and 1997 tax returns were not part of the Paternity Proceeding. In addition neither the Paternity Proceeding or the resulting settlement had any reliance on or connection to Defendant Visone's tax returns that are the subject matter of this proceeding.

"Rule 404(b) interposes no absolute bar to circumstantial evidence *intrinsic to the*

*crime for which the defendant is on trial* (emphasis added), *United States v. Tutiven*, 40 F. 3d 1, 10 (1st Cir. 1994).  Defendant Visone is not being charged with anything related to the Paternity Proceeding.  The tax returns in question did not exist at the time of the filing of the Paternity Proceeding.   For these reasons the Paternity proceeding is extrinsic to the present matter for which Defendant Visone is now on trial.

In the event that the Court should find that the Paternity Proceeding evidence is not subject to Rule 404(b) analysis, the admissibility of intrinsic evidence is still subject to Rule 403 analysis.  That is whether the intrinsic evidence probative value is substantially outweighed by the danger of the evidence's unfair prejudice.  For the reasons set forth above the paternity proceeding evidence would be highly prejudicial to the Defendant Visone.  Particularly where the Government intends to rely so heavily on the Paternity Proceeding evidence.

**VIII. Conclusion**

Judge Dilday's findings and conclusions of law constitute "testimonial" hearsay and are based on "testimonial" hearsay of witnesses.  Defendant Visone has not had the opportunity to confront those witnesses, findings and conclusions.  The admission of Judge Dilday's rulings in this matter are expressly prohibited by Crawford v. Washington.

The Paternity Proceeding evidence the Government is seeking to admit is being offered simply to demonstrate a propensity by Defendant Visone to make false statements. The Paternity Proceeding evidence has no special relevance to the motive, the knowledge or the intent of Defendant Visone in the present matter.   For these reasons the Paternity Proceeding evidence should be excluded under Rule 404(b) of the Federal Rules of Criminal Procedure.

The Paternity Proceeding evidence is clearly extrinsic evidence as it involves an unrelated civil matter filed a year prior to the present criminal matter. As such the Paternity Proceeding Evidence is subject to Rule 404(b) analysis. Even in the even that the Paternity Proceeding Evidence is either admissible under Rule 404(b) or not subject to Rule 404(b) the evidence is inadmissible under Rule 403. The prejudice of the Paternity Proceeding evidence far outweighs the evidence's probative value. In addition the evidence would only serve to both confuse and mislead the jury.

For these reasons Defendant Visone requests that the Court deny the Government's motion to include the Paternity Proceeding evidence under federal Rule of Criminal Procedure Rule 404(b).

**ANTHONY VISONE**
By his attorney,

/s/ *Albert F. Cullen, Jr.*
BBO# 107900
30 Massachusetts Avenue
North Andover, MA 01845
(978) 794-5658

Dated: March 28, 2005

## Certificate of Service

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

/s/ ***Albert F. Cullen, Jr.***
Albert F. Cullen, Jr.