UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>ANTHONY VISONE )<br>)<br>        Defendant ) | CR. No.:04-10123 (DPW) |

**MEMORANDUM IN RESPONSE TO GOVERNMENT'S MEMORANDUM ON LEGAL ISSUES**

**Statement of the Case**

Anthony Visone is charged in a two count indictment with willfully filing a false tax return for the calendar years 1996 and 1997 in violation of 26 U.S.C. §7206(1) in that he is alleged to have underreported his income in each year.

**Statement of Anticipated Evidence**

The defendant expects that evidence will be offered at the trial which will show that Anthony Visone was the sole shareholder of First City Management Corporation, Inc. which included a number of subsidiaries which operated automobile dealerships in Massachusetts and other states as well as leasing companies and financial service companies related to the sales and leasing of automobiles( hereinafter collectively referred to as FCM). The evidence will further show that the defendant had borrowed substantial sums of money from FCM up through 1997. The government also contends that the evidence will show that FCM's accountants advised Visone when preparing tax

returns for FCM in 1997 that the IRS might consider the loans made in 1996 as "constructive dividends" since the substantial loans made in earlier years had not been repaid.[1]  After discussing the treatment and the possible consequences the accountants recorded the advances to Visone on the books of FCM as "loans to shareholder" or as loans to an entity which the government contends was a nominee for Visone.

All of the transactions were recorded on the books of FCM and all transactions were conducted through checks or wire transfers.  The loan advances to Visone in 1996 were not reported on his individual tax returns since loan proceeds are not income.

In 1997 FCM again made advances to Visone which were regarded as "loans to shareholder".  The government further alleges that Visone diverted $743,569 of corporate funds in 1997 to his own use.  This characterization is disputed but for purposes of this memo it will be regarded as a "loan to shareholder".

Again, the transactions were recorded on the books of FCM and all transactions were conducted with checks or wire transfers.  These amounts were not reported on Visone's 1997 individual income tax return since loan proceeds are not income.[2]

---

[1] In fact during the Probate Court proceedings, referred to in the government's 404(b) motion, the Probate Court Judge found the amounts to be "constructive dividends".

[2] FCM did not file corporate returns 1997.

**ISSUES**

Whether the advances to the defendant Anthony Visone were "loans" and as such not reportable as income?

Whether the advances, if not loans, were to be treated as "constructive dividends"?

Whether FCM had earnings and profits from which it could pay "dividends"?

Whether the advances were a return of capital to the defendant Visone because FCM had no earnings or profits?

**ARGUMENT**

It is the defendant's contention that Visone did not "divert" any monies from FCM. To the extent that FCM advanced him funds, all of which were recorded on the books and records of FCM it is the defendant's position that they were either loans to him as a shareholder or to other entities. If the government can show that he did not have the intention or ability to repay the amounts advanced to him the defendant states that the advances would be characterized by the accounting witnesses as "constructive dividends".[3]

The defendant has consistently advanced to the government throughout

---

[3] The government in its disclosures to the defendant has stated that FCM's accountants will testify that advances made in 1996 might be treated by the IRS as "constructive dividends" due to the substantial amount of unpaid loans from prior years. Further an expert accounting witness in the paternity suit evidence which the government is seeking to introduce testified that the advances were a "constructive dividend". The accountants were never examined as to whether FCM had earnings and profits from which it could pay dividends.

the investigation and at conferences that if the IRS believed that the advances were not loans, the funds would be a return of capital since FCM did not have any "earnings or profits" for the years in question. In fact the opinion in *United States v. D'Agostino,* 145 F.3d 69, 73 (2d Cir. 1998) was discussed. The defendant argued to the government that FCM had no earnings and profits and since the defendant's investment (his tax basis) in FCM exceeded the amount advanced there was no need to include the amounts advanced on his individual tax return. The government has known that the "no earnings and profits, no income" rule would be raised as a defense to the indictment. The government was further aware that it was the defendant's position that under the rule in *D'Agostino* the government would have to prove that FCM had earnings and profits. The government has had ample opportunity to investigate and determine whether FCM had earnings and profits.[4]

It is the defendant's position that in order for the government to prove that the defendant's return failed to report amounts received from FCM, it must prove that he was under a legal obligation to report the amounts received. The return is not false as to a material matter if in fact there was no obligation to report the monies received. In order to determine whether an advance or payment from a corporation to a shareholder is taxable

---

[4] The defendant submits that the government has reviewed the financial records of FCM and knows that FCM had "no earnings and profits". If this is so the issue is then whether the defendant taxpayer can be charged with filing a false tax return when he does not have to report a return of capital or include it in his income. In sum the return would not be false as to a material matter.

(reportable), the government must first prove whether the payment was a distribution made with respect to the corporation's stock. A payment from a corporation to a shareholder that is not a distribution with respect to its stock may be, for example, a loan, a repayment of a loan, or payment for property or services.

While corporations must report salary paid, corporations are not, for federal tax purposes, required to formally declare distributions to shareholders.  Generally, the distribution of property received by a shareholder from a corporation with respect to its stock is characterized as a dividend, a return of capital, or gain from a hypothetical sale of that shareholder's stock.  A dividend is ordinary income and is taxable at the shareholder's ordinary rate.  Proceeds received as return of capital are not taxable, since a return of capital represents a reimbursement to the shareholder of the amount of money the shareholder has invested. When the distribution cannot properly be characterized as a dividend or return of capital, the shareholder must treat the distribution as gain from a hypothetical sale of stock, which qualifies the distribution for preferential capital gains rates.  Thus, a distribution to a shareholder with respect to the corporation's stock is taxable only if the distribution is a "dividend" or, if it is not a dividend, if the distribution exceeds the amount of capital the taxpayer has invested. *See.Case Note*. *41 S. Tex. L. Rev. 1475*

The Internal Revenue Code ("IRC") sets forth the rule under which distributions are to be treated as dividends or a return of capital, depending upon the corporation's earnings and profits. See, See *I.R.C. 301(c)(3)* (1994)  The Code defines a dividend as "any distribution of

property made by a corporation to its shareholders out of its earnings and profits. See, I.R.C. 316(a)(1994)  Whether a distribution can ever be a dividend, therefore, depends upon the economic health of the corporation. Dividends can be thought of as earnings that a profitable corporation distributes to shareholders in proportion to their equity ownership.  A corporation, logically, may make a distribution even when it is unprofitable; a distribution from an unprofitable corporation will generally not be a dividend. See, *Bittker & Eustice, Federal Income Taxation of Corporations & Shareholders*  note 39, P 7.02, at 7-6. If a corporation has no earnings during a year and has no accumulated earnings and profits any distribution by it to a shareholder is a return of capital to the extent the shareholder has basis. *United States v. D'Agostino*, 145 F.3d 69 (2nd Cir. 1998); see generally *Bittker & Eustice* supra, @8.02[3].

In *United States v. D'Agostino* the Court held that corporate funds diverted by a shareholder constitute taxable income only to the extent that the Corporation had earnings and profits during the tax year in which the diversion occurred. The court in *D'Agostino* articulates the "no earnings and profits, no income rule" which holds that diverted corporate funds are treated as constructive dividends to the shareholder only to the extent, the Corporation has earnings and profits.  To the extent that the Corporation's distribution to a shareholder is not made out all of earnings and profits, IRC 301(c)(2) treats the distribution as a return of capital to the shareholder that is applied against and made in reduction of the adjusted basis of the shareholders stock.  The court goes on to find that it was entirely possible for a taxpayer to intend to evade paying taxes on diverted

funds but found that bad intentions alone are not punishable. "The diversion of funds cannot constitute a criminal offense, despite criminal intent, if no taxes are due". In reaching its conclusion the court held that "no earnings and profits, no income rule" was applicable and that diverted corporate funds are taxable only to the extent of earnings and profits. The court in its decision cited *Truesdell v. Commissioner* 89 TC 1280 (1987).

In *Truesdell v. Commissioner*, a civil corporate diversion case, the Tax Court clarified and rearticulated the "no earnings and profits, no income rule". Simply put, when a corporation has no earnings and profits, any distribution to a shareholder, whether made with respect to the corporation's stock, formally declared, actually distributed, or constructive, cannot be a dividend. Under *Truesdell*, in civil tax diversion cases, the government must prove the existence of a diversion and the taxpayer's dominion and control over the diverted funds. Then, the taxpayer bears the burden to prove the character of the diverted funds. Finding that a taxpayer's willful intent to evade taxes should be "completely ignored" by automatic application of the constructive dividend rules, the court held that the provisions of section 301(c) controlled.

Thus, under *Truesdell*, the government must prove the corporation's earnings and profits were sufficient to support a dividend before it can claim that such diverted funds were actually dividends, and the tax consequences of a corporate distribution must reflect economic reality. See *Note*, *supra* @1485-1486. Furthermore the government has acquiesced to this decision. AOD 1988-025: 1988 AOD LEXIS 22. Additionally commentators have opined that even an unlawful diversion of corporate funds is a constructive

distribution pure and simple.  *Bittker & Eustice; supra @8.05 Constructive Distributions[9] Unlawful Diversion of Corporation Income By Shareholder.*  The commentators further opine that efforts to characterize diversions as income regardless of earnings and profits normally should no longer occur. *Id*

The government contends that this is an issue of first impression in the First Circuit. See, Government's Memo @4.   However, the First Circuit in *Currier v. United States,* 166 F.2d 346 (1st Cir. 1948) held that a constructive dividend is taxable as a dividend only if paid out of earnings and profits.  While as argued by the government not all circuits agree it appears that the "no earning and profits, no income" rule has been applied in many circuits.  See, *Currier*, supra. (1st Cir.); *D'Agostino*,supra. (2nd Cir.); *DiZenzo v. Commissioner*, 348 F.2d 122 (2nd Cir. 1965); *Bernstein v. United States*, 234 F.2d 4755 (5th Cir. 1956); *Demmon v. United States*, 321 F.2d 203 (7th Cir.1963); *San Simon v. Commissioner*, 248 F.2nd 869 (8th Cir. 1957), *Alexander Shokai, Inc. v. Commissioner*, 34 F.3d 1480 (9th Cir 1994); see also *Federal Tax Coordinator* 2d at §J-1617.

In *United States v. Bok, 156 F.3d 157, 162 (2d Cir. 1998)* the Second Circuit held that a defendant is generally entitled to instructions relating to his theory of defense, See,  *D'Agostino, 145 F.3d at 72* ("In order to merit a charge on the return of capital theory, a defendant must satisfy a

burden of production by showing that an adequate basis in fact exists for the charge.").[5]

The defendant submits that D'Agostino applied the correct rule of law when it allowed the defendant-taxpayer to show the economic reality of the transactions in question. The defendant taxpayer is applying the tax laws as written. The decisions in *United States v. Davis, United States v. Miller, and United States v. Williams* and the other cases cited in the government's memorandum are factually distinguishable and ignore the reality of the tax code which in many instances elevates form over substance and further ignore the fact that the government has the burden to prove that the amounts received from the corporation were taxable or constituted gross income. Even the *Miller* court cited at length in the government's brief allowed for the defense as long as the taxpayer could show that they were intended to be a return of capital. Unlike the factual situations in those cases the defendant in this case asserted this defense early in the investigation and has given the IRS ample opportunity to determine the existence of earnings and profits. These decisions also appear to punish "bad intentions"; which the *D'Agostino* court properly found are not punishable in certain situations.

Under sections 301 and 316 of the tax code, the issue of the taxpayer's intent is not relevant. These sections look to the facts of the transaction not the corporation or individual's intent. It is not fair to apply a

---

[5] The defendant submits that it has no burden of proof and the government has the obligation of showing that the distributions are income which should have been reported.

different rule because the defendant is alleged to have failed to include certain items as income. The Code should be applied uniformly regardless as to whether it is a civil or criminal proceeding. If the individual did not have to include the monies received on his return as income in a civil context, he should not be criminally prosecuted for failing to do.

Assuming arguendo, that the government proves the defendant's bad intent, that the failure to include distributions as gross income was intended to evade tax,(or avoid a probate court order) and, therefore, the government argues that if one intends to evade tax or avoid reporting income there must have been taxes due. However, when a taxpayer can affirmatively show that the corporation has no earnings and profits, then that taxpayer has proven that the transaction could not - in substance and economic reality - possibly have produced a dividend or income which had to be reported.

The substance of the transaction is controlled by the Code, not the taxpayer's intent. The D'Agostino decision makes it clear that a defendant's bad intent cannot change the substance of the underlying transaction.

Conclusion

For the foregoing reasons, the defendant respectfully requests this Court to apply the "no earnings and profit, no income " rule in this case and rule that the government must prove that FCM had earnings and profit out of which the distributions were made.

In the alternative the defendant requests (without waiving any right to have the government prove each and every element of the crime charged) that this court allow the defendant to present evidence both through cross

examination of the government's witnesses and in its defense case that the corporation had no earnings and profit and that the defendant need not have to report the monies distributed from the corporation on his individual tax return.

Respectfully submitted,<br>
Anthony Visone<br>
By his attorney,<br>
<br>
/s/Albert F. Cullen,Jr.<br>
Albert F. Cullen, Jr.<br>
30 Massachusetts Ave.<br>
North Andover, MA 01845<br>
978.794.5658

Dated: March 28, 2005

### Certificate of Service

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

/s/ <b><i>Albert F. Cullen, Jr.</i></b><br>
Albert F. Cullen, Jr.

Case 1:04-cr-10123-DPW     Document 24     Filed 03/28/2005     Page 12 of 12