UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 04-10123 (DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY VISONE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### DEFENDANT'S MOTION TO EXCLUDE EVIDENCE

**I. Introduction**

In late November 2005, approximately one month prior to trial the Government notified the Defendant that it intended to produce additional documents that the Government intended to use at trial. At that time the trial was scheduled to commence on January 3, 2006. On December 6, 2005, Defendant filed a motion to exclude the additional documents or in the alternative for a continuance. On December 13, 2006 the Court held a hearing in connection with the production and use of these documents. The Court ordered the Government to file an affidavit explaining the circumstances surrounding the production of the documents (see Dec. 13, Transcript, P.45, L.1-3). The Court also gave the Defendant leave to depose the attorney who responded to the subpoena (see Dec. 13, Transcript, P.45, L. 4-7). Finally the Court permitted the Defendant to submit "some sort of further motion concerning the exclusion of the documents", stating, "this is a Grand Jury misuse issue," (see Dec. 13, Transcript, P.45, L.17-24).

**II. Facts**

On April 14, 2004 the grand jury indicted Anthony Visone charging him in a one

count indictment with a violation of  26 U.S.C. 7206 alleging that he had underreported

his gross income in the calendar year 1996.

A subpoena for documents dated April 8, 2004 was issued by the United States

District Court to the Custodian of Records of Gallagher & Associates, P.C.  The

subpoena called for the production of:

> "All non-privileged documents and records, including but not limited to court
> pleadings, discovery materials, deposition transcripts, trial tapes and trial
> transcripts, concerning Anthony Visone."

The subpoena also stated that:

> "In lieu of appearing before the Grand Jury at the date and time shown above,
> you may comply with this subpoena by causing the materials described to be
> mailed or delivered to the agent serving  this subpoena or by causing such
> materials to be mailed to the Assistant U.S. Attorney at the address shown below.
> If you have any questions, contact Special Agent Sandra Lemanski, IRS.-C. I. at
> 617-316-2125. Such documents must be received before the return date of this
> subpoena."

The return date of the subpoena was initially Wednesday, April 14, 2004.  Since

the subpoena could not be served prior to the April 14, 2004 grand jury session, the I.R.S.

agent after discussing the matter with Del Wright, Jr. changed the return date of the

subpoena to April 28, 2004 and initialed the change.(See, Affidavit of Sandra Lemanski,

Para 3.)  The subpoena was served sometime between April 20, 2004 and April 26, 2004.

(Affidavit of Lemanski,Para 3. and Deposition transcript of Garrett Harris p. 9).

On April 26, 2004 Mr. Harris left a voice mail for Ms. Lemanski and sent her a

letter confirming that he had a previous conversation with her prior to the receipt of the

subpoena wherein he informed her that the records were voluminous and that she had

indicated that she would review the files in his office.  If she was not going to review the files in his office he requested an additional week to compile, organize and deliver the documents (see, Exhibit B)[1].  Mr. Harris in his voice mail left a message that he was willing to do whatever made sense as far as responding to the subpoena -"what was the most efficient way to respond to the subpoena," (Deposition P.12, L. 19-20).  Mr. Harris recalled that Ms. Lemanski left him a voice mail message on the 27th that he did not have to appear on the 28th and she would be back in touch, (Deposition P. 14, L. 1-8) (Exhibit C).  Mr. Harris understood that he was released from appearing on the 28th  but that he was not wholly released from the subpoena (Deposition p.17, L. 14-17; p. 23, L. 10-18).

A superseding indictment charging Visone in two counts with violations of 26 U.S.C. 7206 for the years 1996 and 1997 was returned by another grand jury on August 25, 2004.[2]

The Government did not present the subpoenaed Gallagher documents to either grand jury or use them in any manner in the investigation since Mr. Harris heard nothing from the Government regarding the Visone documents until he wrote in June, 2005 to Ms. Lemanski asking whether she planned to review their file "pursuant to the Government's Grand jury Subpoena…" (Exhibit D).  Mr. Harris' June, 2005 letter was well after the initial trial date had been scheduled.

This Court on February 22, 2005 had set a trial date of July 11, 2005.  Mr. Harris believed the records were still under the grand jury subpoena when he wrote the letter of June 8, 2005. (Transcript p.23, L. 3-5)  He did not know that Mr. Visone had been

---

[1] There is a slight difference between agent's Lemanski's recollection and Mr. Harris's as to when this conversation occurred, the 26th or the 27th. (Deposition P.  13, L. 15-21)
[2] The defendant believes that it was a different grand jury since a different foreperson signed the superseding indictment.

indicted nor was he so informed by Ms. Lemanski.   Sometime in July, 2005 Mr. Harris

had a conversation with Mr. Wright wherein he was requested to send certain documents

to Mr. Wright .  On July 6, 2005, Mr. Harris sent the requested documents by Federal

Express stating that they were being produced in compliance with the Government's "

Grand Jury Subpoena" (Exhibit E).  A meeting was set up for the Government to view

additional documents in October 21, 2005 and after viewing them the Government

requested that all the documents be sent to Washington.  They were forwarded to the

Government on October 24, 2005.   Mr. Harris did not see that the production of the

documents was a voluntary production, rather Mr. Harris stated the documents were

produced pursuant to the subpoena (Deposition p. 37 L.1-10).  Mr. Harris was not

released from the subpoena. (Deposition p.45, L. 11-22)   It was not until November 28,

2005 that the Government attempted to notify the Defendant of the existence of the

documents and the Government's intention to use the documents in their case in chief at

trial.  Defendant's counsel did not actually learn of the documents until December 6,

2005 during a telephone conversation with Government's counsel.

III.  Argument

      A.) Summary of Argument

      The government obtained the Gallagher records pursuant to a grand jury subpoena

that had been issued by a grand jury which had returned an indictment and it is very

likely that the grand jury's term had expired.  Further even if the government had the

right to continue their investigation of Visone for possible violations in other years,[3] the

government did not seek the records until well after a superseding indictment was

---

[3] Since the superseding indictment was apparently returned by a different grand jury there is a question as
to whether the grand jury was sitting on the return day.

returned.  It is clear that the government used a subpoena issued by a grand jury whose

term had expired to obtain records in preparation for trial.  This is an improper use of the

grand jury subpoena process and thus the records obtained from Gallagher should be

suppressed.

The government apparently makes two arguments in support of the manner in

which it obtained the Gallagher records.

The first is that the subpoena was validly issued before the return of the first

indictment and therefore the date for the return could be changed since the government

was continuing its investigation into other years.

The second argument is that Mr. Harris was released from his obligations

pursuant to the subpoena and therefore produced the records voluntarily.

Turning to the second argument it is clear from the record that Mr. Harris was not

released from his obligations.  In all of his correspondence with the government he

referred to the subpoena and when he produced documents he made it very clear that they

were being produced pursuant to the grand jury subpoena.  At no time was he informed

by the government that he had been released from the subpoena.  Further his testimony

clearly states that he produced the records pursuant to the subpoena.  The issue is not

what instructions were given to Ms. Lemanski by Mr. Wright but what Mr. Harris

understood.  He understood that he received a grand jury subpoena, it was not a voluntary

production.

The subpoena was dated April 8, 2004 and called for the production of documents

on April 14, 2004(the date the grand jury was in session and returned the first

indictment).  However the subpoena could not be served for some unknown reason and

the date was changed to a date after the indictment was returned.  The government argues

that since we were continuing our investigation we were within our rights to obtain the

records pursuant to a subpoena issued prior to the close of our investigation.  As a general

proposition this may be true, however in this case the records were not obtained during

the investigation, but well after the return of the superseding indictment.  The

government did not even bother to look at the documents during the investigation by the

grand jury.  It was not until some 14 months after the grand jury investigation was

concluded that the documents were obtained and only after the custodian Mr. Harris

wrote to the government.[4]  By this time the government was well aware of the possible

defenses to the charges and could determine if the documents could be of relevance in

combating the possible defenses.  It is clear that up to this point the government was of

the opinion that they were needed.

**B.)  Use Of Grand Jury Subpoena To Obtain Documents In Preparation For Trial After Grand Jury Proceedings Concluded Constitutes Abuse of Grand Jury.**

"The grand jury is, in principle an independent body and its proceedings may not

be policed in any detail.  On the other hand, the possibility of the kind of prosecutorial

abuse alleged in this case stems precisely from the broad leeway granted to the grand

jury.  In the presumptively independent grand jury the Government has at its disposal the

most effective discovery mechanism yet devised," *In re Grand Jury Proceedings*

*(Fernandez Diamante)*, 814 F.2d 61, 70 (1st Cir. 1987).  In the present case the

Government has used the grand jury, through a two year old grand jury subpoena, as a

discovery mechanism solely in preparation for trial.  "It is well established that a grand

---

[4] It is a fair assumption that had not Mr. Harris written his letter, the government would not have requested the documents.

jury may not conduct an investigation for the primary purpose of helping the prosecution

prepare indictments for trial," Id.

"Notwithstanding the presumption of regularity, prosecutors do not have cart

blanche in grand jury matters.  However, a party asserting a claim of grand jury abuse

must shoulder a heavy burden.  One way to carry this burden is to show that the

Government used the grand jury principally to prepare pending charges for trial.  There is

a fine line between improper "trial preparation" use of a grand jury and a proper

"continuing investigation use".  This fine line is difficult to plot and, in most instances,

determining whether a prosecutor has overstepped the [line] will depend on the facts and

circumstances of the particular case," *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir.

2001).

In the present case the production of documents was compelled well after the

grand jury had completed its proceedings.  Therefore there can be no "continuing

investigation use" alleged by the Government.  There was no effort by the Government to

obtain the documents while the grand jury was still active.  The documents were obtained

when the Government realized it needed evidence to dispute one of the defendant's

possible defenses to be raised at trial.  As such the documents were clearly obtained not

only "principally to prepare pending charges for trial", but rather exclusively to prepare

the pending charges for trial.  The obtaining of the documents after the grand jury had

concluded and attempted use of these documents in preparation for trial constitutes an

abuse of the grand jury by the Government.

"To assist in the inquiry [of prosecutorial abuse], courts have devised certain

proxies.  Thus if a grand jury's continuing indagation results in the indictment of parties

not previously charged, the presumption of regularity generally persists," Id.  In the

present case there grand jury had completed its proceedings.  No new parties were

indicted as a result of the production of documents.  "So too when the grand jury's

investigation leads to the filing of additional charges against previously indicted

defendants," Id.  No additional charges were filed against Defendant Visone after the

documents were produced.

The *Flemmi* court in its analysis cites, *In re Grand Jury Proceedings (Johanson)*,

632 F.2d 1033 (3rd Cir. 1980).  The *Johanson* Court in examining grand jury abuse stated,

"It is a firmly entrenched rule that once a defendant has been indicted, a prosecutor may

not use a grand jury's investigative powers for the purpose of securing additional

evidence against the defendant for use in the upcoming trial," Id at 1041.  In the present

case the Government was not making a good faith inquiry into other charges while the

grand jury was still deliberating.  Rather the Government on what amounts to the eve of

trial through a grand jury subpoena utilized the grand jury's investigative powers for the

sole purpose of securing additional evidence against the defendant.  The Government's

actions constitute a clear abuse of the grand jury.

In addition to abusing the grand jury by utilizing its investigative powers to obtain

documents for trial the Government also failed to bring the evidence before the grand

jury pursuant to 18 U.S.C. Sec. 3332.  "Established practice and the statutory language of

18 U.S.C. Sec. 3332 anticipates that the U.S. Attorney will bring the evidence [produced

in connection with a subpoena] before the grand jury," *In Re Antonio Lopreato*, 511 F. 2d

1150, 1153 (1st Cir. 1975).  Since the grand jury had concluded two years prior the

Government had no intent of bringing the documents before the grand jury.  This

provides further evidence that the documents were obtained solely in preparation for trial of the indictment which is prohibited.

The cases where the Government was found not to have abused the grand jury all differ from the present case.  In *In re Pantojas*  the allegations of abuse were unsubstantiated and the individual making the allegations had not yet been indicted.

The *Flemmi* court also cited *United States v. Leung*, 40 F.3d 577 (2nd Circuit, 1994) stating, "[A]s a general rule, "evidence obtained pursuant to [an ongoing grand jury] investigation may be offered at the trial on the initial charges." *Flemmi* at 28. (Again in the present case the evidence (documents) were not actually obtained pursuant to the ongoing grand jury but rather the evidence was obtained years after the grand jury had concluded).

In *Leung* the District Court failed to suppress bank records obtained by the Government through grand jury subpoenas issued after Leung had been indicted on narcotic charges.  On appeal Leung challenged the District Court's ruling.  "It is improper for the Government to use the grand jury for the sole or dominant purpose of preparing fro trial under a pending indictment.  But where the grand jury investigation is not primarily motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges.  A defendant seeking to exclude evidence by a post indictment grand jury subpoena has the burden of showing the Government's use of the grand jury was improperly motivated," *Leung* at 581.

 In holding that Leung failed to establish the disputed subpoenas were issued for the sole or dominant purpose of preparing for trial under the pending indictment the Court relied on the timing of related events.  Leung' bank accounts were revealed in a

9

search of her safe deposit boxes six days after her arrest.  Leung' indictment was returned

eight days after the search of the safe deposit boxes.  The grand jury subpoenas were then

issued five weeks after the indictment before the trial date had been set.  The Government

argued successfully that the additional subpoenas could have been related to additional,

related money laundering charges although no additional charges were ever indicted.

Leung's case is clearly distinguishable from the present case.   The records in question

were not produced until years after the grand jury had concluded.  The records were

produced not only after a trial date had been set but clearly in anticipation of that trial and

the defendant's possible defenses in said trial.  There was no grand jury exploring

additional related charges at the time documents were produced.  Unlike _Leung_ the

documents in the present case were clearly sought by the Government for the sole and

dominant purpose fro preparing for trial in connection with the long pending indictment.

      **C.) The Subpoena and Documents Produced In Connection With The
Subpoena Have No Relevance To The Investigation Being Pursued By The Grand
Jury.**
      "Federal grand jury subpoenas which . . . command the production of documents

having no proven relevance to a legitimate grand jury investigation , may be considered

unreasonable and oppressive," _In re Grand Jury Subpoena (M.G. Allen)_, 391 F. Supp.

991, 994 (D.R.I. 1975).  The initial burden of proof concerning the relevance, or lack

thereof, of subpoenaed documents to a legitimate grand jury investigation falls upon the

party seeking judicial enforcement of said subpoena, that is, said initial burden of proof

falls upon the Government," Id at 995.

      The Defendant in the present case is charged with making false statements in

connection with his tax returns for 1996 and 1997.  The documents requested by the

subpoena relate to, "It had to do with some insurance policies on some of the vehicles in

his business.  But along with that case defendant was enjoined from transferring assets

out of the ordinary course of business," (Del Wright, Dec. 13, Transcript P.2 L. 13-19.)

The documents obtained through the subpoena do not relate in any way to the grand

jury's investigation in connection with false statements.  The fact that the documents are

not related is further supported by the fact that the documents were never obtained much

less presented to the grand jury while the grand jury was sitting.

### D.) Remedy

The documents produced pursuant to the grand jury subpoena were requested so

solely in preparation for trial.  Further the documents had no relation to the issues the

grand jury was investigating.  For these reasons the Defendant Visone requests that the

documents be excluded and suppressed from the trial in this matter.  In *United States v.*

*Doe (Application of Ellsberg)*, 455 F.2d 1270 (1st Cir. 1972) the First Circuit ordered

transcripts of Massachusetts based grand jury to be made available to California court.  In

the event that California court found that the purpose of Massachusetts grand jury was to

gather evidence for a pending California trial, the Massachusetts grand jury evidence

would be suppressed.

"The Government may not use the investigative powers of the grand jury for the

sole or dominating purpose of preparing an already pending indictment for trial.  When a

proper showing has been made that the Government has violated this rule, the aggrieved

party may obtain an order quashing any offending subpoenas or suppressing the evidence

obtained thereby at trial," *United States v. Marcus*, 1987 U.S. Dist. LEXIS 793, 8

(D.N.Y. 1987) citing *In re Grand Jury Proceedings (Johanson)* .

11

## IV.  Conclusion

For the reasons set forth herein the Defendant respectfully requests that this court

suppress all of the documents obtained through the grand jury subpoena in question.

**ANTHONY VISONE**
By his attorneys,

/s/  *Albert F. Cullen, Jr.*
BBO# 107900
/s/ *Albert F. Cullen, III*
BBO# 561223
60 K Street
Boston, MA
(617) 268-2240

Dated: January 17, 2005

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic
notice of the electronic filing of this pleading.

/s/ ***Albert F. Cullen, Jr.***
Albert F. Cullen, Jr.