UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>ANTHONY VISONE        )<br>    Defendant        )<br>)<br>_____ ) | Criminal No. 04-10123 (DPW)<br>Judge Douglas P. Woodlock |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO EXCLUDE EVIDENCE**

**I.    Introduction**

On January 17, 2006, the Defendant filed a motion to exclude evidence obtained from Gallagher & Associates, P.C. ("Gallagher & Associates"). The evidence includes testimony and affidavits (the "Testimonial Documents") and other documents (the "Other Documents", collectively, the "Documents") obtained incident to a lawsuit filed against the Defendant and his businesses. The Government opposes the Defendant's motion.

**II.    Facts**

On or about April 20, 2004, a grand jury subpoena *duces tecum* (the "Subpoena") was issued to the custodian of records of Gallagher & Associates for the Documents. The original return date on the Subpoena was April 14, 2004, but the return date was changed to April 28, 2004 on the authority of the attorneys for the Government. This change was made before the Subpoena was served. (Special Agent Lemanski Affidavit: ¶ 3).

After the Subpoena was properly served, Garrett Harris, an attorney with Gallagher & Associates, had a discussion with Special Agent Sandra Lemanski about the Subpoena. Mr. Harris stated that it would be difficult for him to produce the Documents requested pursuant to

the Subpoena by the return date.  As an accommodation to Mr. Harris, the Government agreed to release him from the Subpoena if he agreed to deliver the Documents to the Government at a later, mutually convenient date. (Special Agent Lemanski Affidavit: ¶ 4).

On or about June 8, 2005, Mr. Harris sent a letter (the "June 2005 Letter") to the Government asking whether the Government intended to review the Documents, and if not, to let him know so that he could dispose of them.  In that letter, Mr. Harris made reference to the Subpoena. The Government contacted Mr. Harris shortly thereafter, and asked him to send the Testimonial Documents to the Government.  (Wright Affidavit: ¶ 6).  The Testimonial Documents were sent to the Government on or about July 6, 2005, along with a cover letter identifying what documents were being sent (the "July 2005 Letter").  Also in the July 2005 Letter, Mr. Harris referenced the Subpoena.

On or about October 21, 2005, the Government met with Mr. Harris and briefly reviewed the Documents at the offices of Gallagher & Associates.  (Wright Affidavit: ¶ 8).  At that meeting, the Government informed Mr. Harris of the date of the trial, and told him that he may be called to testify.  (Harris Deposition: page 31, lines 10-13).  Following the Government's review, the Government requested that Mr. Harris send the Documents to the Government.  (Wright Affidavit: ¶ 8).  Mr. Harris consented to the Government's request, and sent the Documents to the Government on or about October 24, 2005.  (Wright Affidavit: ¶ 9).  The cover letter transmitted along with the Documents did not reference the Subpoena.  The Government reviewed the Documents from on or about November 21-27, 2005, and after review, notified the Defendant of the evidentiary nature of the Documents and provided the Defendant with an opportunity to review them.  (Wright Affidavit: ¶¶ 10-12).

**III.    Brief Summary of the Argument**

The Defendant sets forth two theories as to why the Documents should be excluded:

1)   the Government abused the grand jury process by using the Subpoena to obtain the Documents in preparation for trial; and

2)   the Subpoena and the Documents had no relevance to the investigation pursued by the grand jury.

Both the Defendant's arguments are incorrect.

The Government released Mr. Harris from the Subpoena soon after his firm was served and before the Documents were delivered to the Government.  The Government in no way abused the grand jury process because the Government did not use the Subpoena to obtain the Documents.  With respect to the Defendant's relevance argument, the Defendant lacks standing to assert the argument, and the Documents are relevant.

**IV.    Argument**

   *A.    Grand Jury Abuse*

      1.    Release of the Subpoena

The ability to excuse a witness from appearing before a grand jury is withing the province of the prosecuting attorney.  See, e.g. Blackmer v. United States, 284 U.S. 421, 443 (1932) (It is the duty of a witness to respond to a subpoena and to remain in attendance until excused by the court or by the government's representatives.)  See also, In re Grand Jury Witness, 835 F.2d 437 (2d Cir. 1987).

On or about April 26, 2004, Mr. Harris, who is a litigator (Harris Deposition: page 5, line

10), had a conversation with Special Agent Lemanski and was told that he was excused from his appearance before the grand jury. Mr. Harris cannot remember the specifics of the colloquy between Special Agent Lemanski and him, but he acknowledged that he agreed to turn the documents over to the Government at a later date pursuant to that agreement. (Harris Deposition: page 16, lines 5-11).

In her affidavit, Special Agent Lemanski states that she told Mr. Harris that "if he agreed to permit her to review the documents at some later date, he would be released from his obligations pursuant to the Subpoena" and that "Mr. Harris agreed to that arrangement". (Special Agent Lemanski Affidavit: ¶ 4). That oral accommodation was memorialized in Mr. Harris' April 26, 2004 letter (the "April 2004 Letter") to Special Agent Lemanski, in which he confirmed the agreement and stated that if the later review was not acceptable, he would need an additional week to deliver the Documents. (See April 2004 Letter). The Government never informed him that the later review was unacceptable.

The Defendant states in its motion that "(a)t no time was he (i.e., Mr. Harris) informed by the government that he had been released from the subpoena." (Defendant's Motion: page 5). However, that statement is directly contradicted by Special Agent Lemanski's Affidavit, in which she states that she told Mr. Harris that he was released from his subpoena obligations. Mr. Harris, in his deposition, stated that he could not remember if the word "release" was used, but it was his understanding that he was released from appearing, although he believed he was under some kind of continuing obligation to produce the Documents. (Harris Deposition: page 17, lines 10-17).

The Government submits that the only continuing obligation was based on the agreement

between Mr. Harris and Special Agent Lemanski. Moreover, the facts demonstrate that Mr. Harris was released from the Subpoena and produced the Documents based solely on the agreement reached between him and Special Agent Lemanski. In support of its position, the Government points to the following facts:

1) Mr. Harris was told that he was released from his Subpoena obligation (Special Agent Lemanski Affidavit: ¶ 4);

2) Mr. Harris contacted the Government, of his own volition, and asked the Government if it still intended to review the Documents;

3) the Government never acted, in any way, to compel production of the Documents following its release of Mr. Harris from the Subpoena;

4) Mr. Harris is a civil litigator with experience with subpoena power (Harris Deposition: page 5, lines 9-10; pages 41-44);

5) Mr. Harris testified in his deposition that he has released parties from subpoenas in the past, without any formal release procedure or documentation (Harris Deposition: page 41, line 21 to page 42, line 20; page 43, lines 4-5);

6) Mr. Harris testified in his deposition that, absent a subpoena, he would have turned the Documents over to the Government voluntarily (Harris Deposition: page 17, lines 18-21).

7) no Government representative ever mentioned the Subpoena to Mr. Harris after he was released from it (Harris Deposition: page 44, lines 9-24).

Despite these facts, the Defendant urges this Court to conclude that Mr. Harris was not released from the Subpoena and was compelled by the Government to produce the Documents. The Defendant has cited no cases to support his argument, and failed to cite any cases in which a court held that the delivery of documents by a witness after the witness was released from a

subpoena was an abuse of the grand jury process.  While case law addressing the issue is scant, one such case is United States v. Re, 313 F. Supp. 442 (S.D. N.Y. 1970).  In Re, an accountant was served with a forthwith subpoena *duces tecum*, and the Government excused his appearance pursuant to an agreement to turn over the relevant documents later that day, after the grand jury session had ended.  Id.  The Defendant in Re asserted, *inter alia*, that his Constitutional rights were violated and that the Government abused the grand jury process in excusing the witness's appearance and accepting the documents later.  Id. at 450-451.  The Re Court rejected the Defendant's contentions. Id.

Based on the facts adduced at the deposition and the affidavits provided by the Government, the facts clearly demonstrate that the Government intended to, and in fact did, release Mr. Harris from the Subpoena.  In addition, the Government did nothing to compel production of the Documents after releasing Mr. Harris from the Subpoena.

### 2. Improper "Use" of the Grand Jury

The Government did not use, much less abuse, the grand jury process in any manner in obtaining the Documents. The Government agrees with the Defendant that it is impermissible to use a grand jury subpoena solely to gather evidence for trial.  Here, however, the Subpoena was issued while there was an ongoing investigation of the Defendant.  Moreover, the Documents were not put before the grand jury, and the grand jury returned the superseding indictment against the Defendant without regard to the Documents.

It should be noted that "a party asserting a claim of grand jury abuse must shoulder a heavy burden." United States v. Flemmi, 245 F.3d 24 (1st Cir. 2001).  In Flemmi, the First Circuit held that "one way to carry this burden is to show the government used the grand jury

principally to prepare pending charges for trial." Id., citing In re Grand Jury Proceedings (Fernandez Diamante), 814 F.2d 61, 70 (1st Cir. 1987).

If the Court were to determine that Mr. Harris was somehow not released from the Subpoena, as a preliminary matter the Court would have to determine that the Government used the grand jury's subpoena powers improperly before excluding the Documents. The Defendant cites no reference to the actual use of the grand jury by the Government with respect to Mr. Harris after April 2004. Instead, the Defendant argues that because Mr. Harris referenced the Subpoena in two cover letters sent to the Government (though not in the cover letter in which the Other Documents were actually sent to the Government), the Government somehow "used" the Subpoena to obtain the Documents. The Government submits that reference to the Subpoena, at least in the mind of the Government, was simply a shorthand reference to the information sought, and the agreement reached between Mr. Harris and the Government.

The Defendant also relies on United States v. Leung to support its grand jury abuse theory. 20 F.3d 577 (2d Cir. 1994). However, that reliance is misplaced. In Leung, the Second Circuit held that the prosecutor's use of grand jury subpoenas would be improper if "the disputed grand jury subpoenas **were issued** for the sole or dominant purpose of aiding the Government in preparing for trial." (Emphasis supplied) Id. Here, because the Subpoena was properly issued while the grand jury investigation of the Defendant was ongoing, the Defendant cannot establish that the Subpoena was issued for an improper purpose. Therefore, the Defendant's argument that the Government abused the grand jury must fail.

Here, not only was there no grand jury abuse, there was no use of the grand jury process at all by the Government with respect to Mr. Harris after April 2004. In June, 2005, Mr. Harris

contacted the Government and presented the Government with the opportunity to review the Documents. In or around the beginning of July, 2005, Mr. Harris was asked to send the Testimonial Documents, and he agreed and complied. In October 2005, Mr. Harris was asked to send the Other Documents to the Government's offices, and he again agreed and complied. There was no compulsion, either in law or in fact. The Subpoena was moot, and the Government in no way either stated or implied that Mr. Harris had an obligation to produce the Documents pursuant to the Subpoena. He sent the Documents because he was fulfilling the agreement he had made with Special Agent Lemanski in April 2004.

### B.   *Documents have no Relevance*

The Defendant argues that the Documents were not relevant to the grand jury investigation and, as such, should be suppressed at trial. Assuming, as the Defendant submits and the Government rejects, that the Documents were produced pursuant to the Subpoena, the Defendant lacks standing to assert such an argument. Generally, only the recipient of a subpoena can challenge the subpoena on relevance grounds. See, e.g. United States v. R. Enterprises, 498 U.S. 292, 301 (1991). As Mr. Harris was the recipient of the Subpoena, only he could have challenged the Subpoena on relevance grounds, and he did not.

Notwithstanding the Defendant's standing, as long as the information sought would produce information relevant to the general subject of the grand jury's investigation, such a challenge (properly before a court as a motion to quash) would be denied. Id. Absent subpoena, the Government is free to gather trial evidence as it sees fit. Given that the Documents were delivered absent a subpoena, there is no legal basis to unilaterally suppress the Documents. In fact, to use an extreme example, even if the Government had broken into Mr. Harris' office and

stolen the Documents, suppression of the Documents would not be appropriate. See, e.g., United States v. Payner, 447 U.S. 727 (1980) (holding that the supervisory powers of the federal courts do not authorize a court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court).

While the First Circuit has questioned the reach of Payner, it noted that it would not need to enter that debate absent something which "shocks the judicial conscience". United States v. Mitro, 880 F.2d 1480, n4 (1st Cir. 1989). In this case, the Government is in the possession of lawfully obtained evidenced, to be used in the pursuit of justice. Nothing the Government did should alarm the judicial conscience, least of all the Government's good faith efforts to obtain the Documents.

**V.    Conclusion**

For the reasons set forth above, the Government respectfully requests that the Defendant's motion be denied.

Respectfully submitted,

DANA BOENTE
Deputy Assistant Attorney General
/s/Del Wright Jr.
Susanne Sachsman
Trial Attorneys
U.S. Department of Justice

Attachments:

- Letters
    - April 2004 Letter
    - June 2005 Letter
    - July 2005 Letter
- Deposition of Garrett Harris
- Affidavits:
    - Special Agent Sandra Lemanski
    - Del Wright Jr.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed electronically with the Court, and notice of the filing, as well as copies, will be available to all parties once filed.

/s/Del Wright Jr.
Trial Attorney
U.S. Department of Justice
