UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 04-10123 (DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY VISONE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S TRIAL BRIEF**

Now comes the Defendant, Anthony Visone, by and through his undersigned attorneys, and pursuant to the Court's April 6, 2006 Order, submits the following trial brief outlining issues of law and evidentiary issues.

**Statement of the Case**

Anthony Visone is charged in a two count indictment with willfully filing a false tax return for the calendar years 1996 and 1997 in violation of 26 U.S.C. Sec. 7206(1) in that he is alleged to have underreported his income in each year.

**Statement of Anticipated Evidence**

The Defendant expects that evidence will be offered at the trial which will show that the Defendant was the sole shareholder of First City Management Corporation, Inc. First City included a number of subsidiaries which operated automobile dealerships in both Massachusetts and other states. First City also owned and operated leasing companies and financial service companies related to the sales and leasing of automobiles (hereinafter collectively referred to as "FCM"). The evidence will further show that the Defendant borrowed substantial sums of money form FCM up through 1997. The Government also contends that the evidence will show that FCM's accountants advised Visone when preparing tax returns for FCM in 1997 that the IRS might consider the loans made in 1996 as "constructive dividends" since the substantial loans made in earlier years had not been repaid. After discussing the treatment and the possible consequences the accountants recorded the advance to the Defendant on the books of FCM as "loans to

shareholder" or as loans to an entity which the Government contends was a nominee for the Defendant.

All of the transactions were recorded on the books of FCM and all of the transactions were conducted through checks or wire transfers. The loan advances to Visone in 1996 were not reported on his individual tax returns since loan proceeds are not income.

In 1997 FCM again made advances to Visone which were regarded as "loans to shareholder". The Government further alleges that Defendant diverted $743,569 of corporate funds in 1997 to his own use. Defendant disputes this characterization but for purposes of this memo it will be regarded as a "loan to shareholder".

Again all of the 1997 transactions were recorded on the books of FCM and all transactions were conducted with checks or wire transfers. These amounts were not reported on Visone's 1997 individual income tax return since loan proceeds are not income.

**Legal Issues**

Whether the advances to the Defendant were "loans" and as such not reportable as income?

Whether the advances, if not loans, were to be treated as "constructive dividends"?

Whether FCM had earnings and profits from which it could pay "dividends'?

Whether the advances were a return of capital to the Defendant because FCM had no earnings or profits?

**Argument**

   1. **Introduction**

It is the Defendant's position that Defendant did not "divert" any monies from FCM. All of the monies advanced to Defendant, which were recorded on the books of FCM were either loans to the Defendant or other entities. If the Government can show that the Defendant did not have the intention or ability to repay said loans the advances could be characterized by accounting witnesses as "constructive dividends.[1]

---

[1] The Government in its disclosures to the Defendant has stated that FCM's accountants will testify that advances made in 1996 might be treated by the IRS as "constructive dividends" due to the substantial

The Defendant throughout this matter has advanced the position that even if the IRS position was the advances were not loans, the advances would constitute a return of capital since FCM had no "earnings or profits" for the years in question. As the Court is aware the Defendant places his position in part on <u>United States v. D'Agostino</u>, 145 F. 3rd 69, 73 (2d Cir. 1998). FCM has no earnings or profits for the years in question. Defendant's investment (his tax basis) in FCM exceeded the amount advanced to Defendant. Therefore Defendant was not required to include the advances on Defendant's individual tax return. The Government is well aware the "no earnings, no profits" defense will be raised at trial by the Defendant. Being aware of this defense the Government must prove during trial that FCM had earnings and profits. The Defendant both believes the Government having had ample opportunity has both examined FCM and determined that FCM had no earnings or profits. If this is in fact the case the issue then becomes whether or not the Defendant can be charged with filing a false tax return when he had no obligation to report the advances as return of capital or as income. In sum the Defendant's return is not false as to a material matter. The Defendant's return is not false if there was no obligation to report the monies received on Defendant's tax return.

**2. Were the Advances To Defendant Loans and Not Reportable as Income?**

The government must first prove that the advances to Defendant were a distribution made with respect to FCM's stock. A payment from a corporation to a shareholder that is not a distribution with respect to its stock, may be for example, a loan, a repayment of a loan, or payment for property or services. Proceeds received as a return of capital are not taxable, since a return of capital represents a reimbursement to the shareholder. Thus, distribution to a shareholder with respect to the corporation's stock is taxable only if the distribution is a "dividend", or if it is not a "dividend" if the distribution exceeds the amount of capital the taxpayer has invested (See *Case Note: 41 S. Tex. L. Rev. 1475*).

---

amount of unpaid loans from prior years. Further an expert accounting witness in the paternity suit evidence which the Government is seeking to introduce (an issue which the Defendant also addresses later in this brief), testified that the advances were a "constructive dividend". The accountants were never examined as to whether FCM had earnings and profits from which it could pay dividends.

The Internal Revenue Code ("IRC") sets forth the rule under which distributions are to be treated either as dividends or a return of capital depending upon the corporations earning's and profits,  See, *I.R.C. 301(c) (3) (1994)*.  The I.R.C. defines dividend as "any distribution of property made by a corporation to its shareholders out of its *earnings and profits* (emphasis added), See, *I.R.C. 316(a0 (1994)*.  If a corporation has no earnings during a year and has no accumulated earnings and profits any distribution by it to a shareholder is a return of capital to the extent the shareholder has basis, *D'Agostino*, at 69.

In *D'Agostino* the Court articulates the "no earnings, no profits, no income rule" which holds that diverted corporate funds are treated as constructive dividends to the shareholder only to the extent, the corporation has earnings and profits.  To the extent that the Corporation's distribution to a shareholder is not made out of all earnings and profits, I.R.C. 301(c)(2) treats the distribution as a return of capital to the shareholder.  The *D'Agostino* Court goes on to hold that even where the taxpayer may have intended to evade paying taxes on diverted funds but the diverted funds did not constitute income, the taxpayer's bad intention alone was not punishable.  "The diversion of funds cannot constitute a criminal offense, despite criminal intent, if no taxes are due," *Id*.  *D'Agostino* held that "no earnings and profits, no income rule" was applicable and diverted corporate funds are taxable only to the extent of earnings and profits.  The *D'Agostino* Court in reaching its conclusion cited, *Truesdell v. Commissioner*, 89 TC 1280 (1987).  (*Truesdell* was a civil corporate diversion case that clarified and rearticulated the no earnings and profits, no income rule.)

Thus under both *D'Agostino* and *Truesdell* at trial the Government must prove FCM's earnings and profits were sufficient to support a dividend before the Government can claim that such diverted funds were actually dividends .  In the event the Government is either unwilling or unable to prove FCM profits and earnings than the advances at issue in this case were not reportable as income by Defendant. In turn by not reporting the advances Defendant's tax returns were not and could not be false as to a material matter with regard to the advances.

The Defendant anticipates that the Government will contend that the "no earnings, no profits, no income rule" is an issue of first impression in the First Circuit.  The

4

Government will contend for this and other reasons this Court should not adopt the reasoning in *D'Agostino*.

In *Currier v. United States*, 166 F.2d 346 (1st Cir. 1948) the Court held that a constructive dividend is taxable as a dividend only if paid out of earnings and profits. Further the "no earnings and profits, no income" reasoning and rule has been adopted in other circuits: See, *Currier*, supra. (1st Cir.); *D'Agostino*, supra. (2nd Cir.); *Bernstein v. United States*, 234 F.2d 4755 (5th Cir. 1956); *Demon v. United States*, 321 F. 2d 203 (7th Cir. 1963); *San Simon v. Commissioner*, 248 F. 2nd 869 (8th Cir. 1957); *Alexander Shokai, Inc. v. Commissioner*, 34 F. 3d 1480 (9th Cir. 1944); and see also *Federal Tax Coordinator 2d* at SJ-1617.

The Defendant submits that *D'Agostino*, applied the correct rule of law when the Court allowed the defendant-taxpayer to show the economic reality of the transaction in question. The Defendant is applying the laws as written. The Government has had ample notice of this defense including a preliminary hearing by the Court regarding this issue.

Further the Defendant also anticipates that the Government will be seeking to punish his "bad intentions" regardless of how the advance transactions are classified. Under Sections 301 and 316 of the tax code, the issue of taxpayer's intent is not relevant. The substance of the underlying transaction is controlled by the Code, not the taxpayer's intent. Also *D'Agostino* clearly states that a defendant's bad intent cannot change the substance of the underlying transaction.

For the reasons contained herein the Defendant requests that the Court in both its rulings and its instructions to the jury apply the "no earnings, no profits, no income" reasoning and rule as set forth in *D'Agostino*.

**Evidentiary Issues**

The main evidentiary issue in the case before the Court is the admission of evidence both relating to and from the 1995 paternity lawsuit filed in 1995 in the Probate and Family Court Department of the Commonwealth of Massachusetts (hereinafter the "Paternity Evidence"). The Defendant before the Court was also the defendant in that action. On March 4, 2005, the Government filed a Notice of Intent to Offer Rule 404(b) at Trial relating to the Paternity Evidence and including but not limited to the State

Court's Findings of Fact and Conclusions of Law.  "The Government maintained that the Paternity evidence is intrinsic and evidence and therefore, is admissible beyond the confines of Rule 404(b)," (See 3/4/06 Gov't Memo, n1, P. 1).

On March 28, 2005 The Defendant filed a motion in opposing the Government's intent to offer the Paternity Evidence.

A hearing was held by the Court on March 30, 2005 at which the Court ruled: "State court judge's finding and conclusions and any reference to paternity will not go before the jury," (see 3/30/2005 Docket Entry attached hereto).

The Government has been aggressively seeking Paternity Evidence by filing a motion in state court.  The Government has referenced its intent to use the Paternity Evidence in this matter on several occasions.  Given both the nature and the amount of Paternity evidence the Government intends to use the Defendant submits it will be nearly impossible for the Government to keep any reference to the paternity from the jury.

Again for the reasons set forth in Defendant's March 28, 2005 opposition and the Defendant's Motion In Limine filed simultaneously herewith any reference to either the paternity action or Paternity Evidence in front of the jury would be highly prejudicial to the Defendant.

In the event that the Government or its witnesses refers to the paternity action or the Paternity Evidence in the presence of the jury the Defendant will move to strike all of the Government's Paternity Evidence as inadmissible

                                             ANTHONY VISONE
                                             By his attorney,

                                             /s/ *Albert F. Cullen, Jr.*
                                             BBO# 107900
                                             60 K Street
                                             Boston, MA
Dated:  April 24, 2006                 (617) 268-2240

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

                                             /s/ ***Albert F. Cullen, Jr.***
                                             Albert F. Cullen, Jr.