IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA )
 )
    v. )
 )
ANTHONY VISONE, )
    Defendant. )
_____)

    Case No.04-cr 10123-01

    Judge Woodlock

_____

GOVERNMENT'S TRIAL BRIEF

_____

DEL WRIGHT, JR.
<u>SUSANNE SACHSMAN</u>
Trial Attorneys
United States Department of Justice

Submitted on April 24, 2006

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BRIEF SUMMARY OF THE INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    THEORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      The 1996 Unreported Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      The 1997 Unreported Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      SUMMARY OF THE OFFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      26 U.S.C. § 7206(1): Filing a False Tax Return . . . . . . . . . . . . . . . . . . . . . . 7

                (1)     Defendant Made Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                (2)     Return False as to a Material Matter . . . . . . . . . . . . . . . . . . . . . . . 8

                        A.      Falsity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                                1.      Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                                        a.      Loans without Obligation to Repay . . . . . . . . . . . 9

                                        b.      Cancellation of Indebtedness Income . . . . . . . . 11

                                2.      Corporate Diversions . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                        B.      Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                (3)     Made Under Penalty of Perjury . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                (4)     Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.     EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.      Summary and Expert Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        B.      Summary Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.    Visual Aids . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.    Intrinsic and Extrinsic Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    (1)    Defendant's Financial Transactions . . . . . . . . . . . . . . . . . . . . . . . . 25

    (2)    Defendant's Filing History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.    Admissibility of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    (1)    Service Center Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    (2)    Business Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    (3)    Photocopies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    (4)    Certified Documents – Public Records . . . . . . . . . . . . . . . . . . . . 29

    (5)    Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

F.    Admissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

G.    Hostile Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

H.    Immunized Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

I.    Impeachment of Government Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . 32

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA        )
                                   )     Case No.04-cr 10123-01
        v.                         )     Judge Woodlock
                                   )
ANTHONY VISONE,             )
        Defendant.          )
_____)

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through undersigned counsel, hereby submits this trial brief to inform the Court of the nature of the case and to identify legal and factual issues that may arise at trial.

### I.    INTRODUCTION

On April 14, 2005, a federal grand jury sitting in Boston, Massachusetts returned a one-count indictment charging Anthony Visone (the "Defendant") with willfully filing a false tax return, in violation of 26 U.S.C. § 7206(1), for tax year 1996. On August 25, 2004, the same grand jury returned a superseding indictment (the "Indictment") charging the Defendant with an additional count of willfully filing a false return, in violation of 26 U.S.C. § 7206(1), for tax year 1997. Trial in this matter is set to commence on May 22, 2006.

### II.    BRIEF SUMMARY OF THE INDICTMENT

The Indictment charges the Defendant with filing false U.S. Individual Income Tax Returns for tax years 1996 (the "1996 Return") and 1997 (the "1997 Return", and together with the 1996 Return, the "Returns"). The Government charged that the Defendant failed to report the following items as income on his 1996 Return:

1

- more than 40 checks payable to the Defendant totaling at least $148,000,

- personal expenses paid on the Defendant's behalf by the Defendant's company, and

- $517,000 diverted from the Defendant's company for the Defendant's personal use.

The Defendant reported total income of $56,319 on the 1996 Return.

On the 1997 Return, the Government charged that the Defendant failed to report the following items as income:

- more than 30 checks payable to the Defendant totaling at least $130,500, and

- $743,569 diverted away from the Defendant's company for the Defendant's personal use.

The Defendant reported total income of $4,887 on the 1997 Return.

### III.    <u>THEORY OF THE CASE</u>

The Government expects that, in its case in chief, it will establish the following facts: the Defendant was the sole shareholder of First City Management, Inc.,  a group of consolidated businesses that included auto dealerships in multiple states, leasing companies and financial services companies incident to auto sales (collectively, "FCM").  The Defendant diverted more than $1.5 million dollars from FCM for his personal use in 1996 and 1997 (the "Prosecution Years"), which he failed to report on the Returns.  Generally, if  FCM's employees or accountants discovered the diversions, the Defendant instructed them to record the diverted funds as loans to shareholder.

In 1996, two significant suits were filed against the Defendant: a civil complaint filed by USF&G against the Defendant and his companies (the "USF&G Litigation") and a paternity case filed against the Defendant personally (the "Guenther Litigation", and together with the USF&G Litigation, the "Lawsuits"). On or about April 19, 1996, the Court in the USF&G Litigation

entered a preliminary injunction prohibiting the Defendant from corporate activities outside the ordinary course of business. In response to the Lawsuits, the Defendant undertook a concerted effort to frustrate the plaintiffs in the Lawsuits by disguising his and FCM's income and assets.

Based in part on the Lawsuits, it is the Government's position that the Defendant chose to disguise a number of his transactions in 1996 and 1997 to make it appear that he had less income and fewer assets than he actually had. Because he was required to provide his tax returns to the court in the Guenther Litigation, the Defendant, in effect, was forced to either allow the plaintiff to see his true income or to falsify his tax returns. He chose the latter.

A.     The 1996 Unreported Income

In 1996, the Defendant caused $517,000 to be transferred from an FCM account to his personal bank account to fund a $517,000 check he wrote from his personal account to make a real estate investment. The Defendant directed FCM's bookkeepers to characterize the $517,000 and another related amount on FCM's books as a loan to a nominee entity unrelated to FCM. The Defendant later ordered the accountants to write the loan off as a bad debt. The Defendant failed to include the $517,000 as income to him either at the time that he received it or at the time that he asked the accountants to write off the debt.

Also beginning in 1996, the Defendant caused FCM to issue him checks for his personal use in place of salary. In 1995, the Defendant reported a salary in excess of $150,000. In 1996, while in the midst of the Lawsuits, the Defendant reduced his salary from FCM to approximately $20,000, and, concomitant with his reduced salary, caused FCM regularly to issue him checks in various amounts, usually $3,000 or $4,000, along with his reduced salary check. During 1996, the total amount of these checks was approximately $148,000.

3

The Defendant generally deposited these checks into his personal bank account along with his salary from FCM, and used funds from that bank account to make investments and/or pay personal expenditures.  Also during 1996, the Defendant caused FCM to pay numerous other personal expenses on his behalf, such as utility bills, housekeeper and baby sitter payments, personal expenses of his parents, and numerous car payments.  The funds diverted, the regular checks and the personal expenses were reported on FCM's books as "loans to shareholder."

The Defendant did not include as income the amounts of the checks made payable to him and drawn from FCM on his 1996 U.S. Individual Income Tax Return.  In addition, the Defendant also failed to include the value of the expenses paid for his personal benefit directly by FCM on his 1996 U.S. Individual Income Tax Return.

### B.    The 1997 Unreported Income

Late in 1996, FCM entered into a contract for the sale of a portfolio of auto leases.  The purchase price was approximately $2.3 million, to be paid to FCM in cash and through promissory notes.  Sometime in 1997, the purchaser and the Defendant renegotiated the sale, and the new terms called for the Defendant to return some promissory notes to the purchaser in exchange for an immediate payment of $743,569 to be followed by another payment at a later date.

Despite the fact that the Defendant was enjoined from corporate activity that was not in the ordinary course of business in the USF&G Litigation, the Defendant instructed the purchaser to divert the $743,569 payment away from FCM, and to make the check payable to a bank in payment of a mortgage obligation for an entity the Defendant both controlled and in which he maintained a 75% beneficial interest.

4

The Defendant never told his accountants or bookkeepers about the diverted $743,569 payment. Instead, he sought to have the FCM receivable from the purchaser written off as an uncollectible debt.  In addition, he sought to have other personal debts written off, including $1 million of what was called his shareholder loan account.

In addition to the diverted $743,569, throughout 1997 the Defendant caused FCM to issue more than 30 checks made payable to him in various amounts.  As in 1996, the Defendant generally deposited these checks into his personal bank account along with his salary from FCM, and used funds from that bank account to make investments and/or pay personal expenditures. The total amount of these 1997 checks was approximately $130,500. The Defendant reported neither the $130,500 nor the $743,569 related to the sale of the lease portfolio as income on his 1997 U.S. Individual Income Tax Return.

## IV.  <u>DISCOVERY</u>

The Government has complied with Federal Rule of Criminal Procedure 16.  The Defendant has been afforded the opportunity to examine all the evidence uncovered by the Government.  In addition, the Defendant was provided with copies of numerous other documents acquired during the Government's investigation, including the following:

- On or about February 7, 2005, the Government provided the Defendant with copies of the Ocean Bank records provided to the Government after the Indictment was returned.

- On or about February 17, 2005,  the Government provided the Defendant with copies of tapes of the Guenther Litigation, and a CD-Rom of a seized computer.

- On or about May 17, 2005, the Government provided automatic discovery pursuant to F.R.Crim.Pro. 16.

5

- On or about November 15, 2005, the Government provided supplemental discovery letters to the Defendant disclosing the Government's expert witnesses.

- On or about November 22, 2005, the Government provided an index of documents in its possession, and provided supplemental discovery relating to stock certificates and information about the USF&G Litigation.

- On or about December 6, 2005, the Government provided notice to the Defendant that it had recently received a number of documents from other litigation against the Defendant, and gave the Defendant opportunity to review those documents.

- On or about December 8, 2005, the Government provided the Defendant with witness statements pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure. In addition, the Government provided a transcript of the Guenther Litigation in which the Defendant testified.

- On or about December 9, 2005, the Government provided the Defendant with copies of a Memorandum of Contact of Bruce Hess.

Rule 26.2 of the Federal Rules of Criminal Procedure and the <u>Jencks Act</u>, 18 U.S.C. § 3500, require the production of the statements of defense witnesses at trial in essentially the same manner as is required with respect to the statements of Government witnesses. Therefore, any statement given by any defense witness should be provided to the Government. <u>United States v. Nobles</u>, 422 U.S. 225 (1975) (court rejects notion that the Fifth Amendment renders criminal discovery basically a one-way street); <u>United States v. Pulvirenti</u>, 408 F. Supp. 12 (E.D. Mich. 1976).

As of the date of this submission, the Government has not received any witness statements or reciprocal Fed. Rule Crim. Proc. 16 Discovery from the Defendant. The Government also has not received any notice from the Defendant of his intent to call an expert witness. The Government requests that if the Defense does not provide notice of an expert witness by May 8, the Court preclude the Defense from using any expert at trial.

## V.     SUMMARY OF THE OFFENSES:

### 26 U.S.C. § 7206(1): Fraud and False Statement

Section 7206(1) makes it a felony to willfully make and subscribe a false document, if the document was signed under penalties of perjury. The elements of a section 7206(1) prosecution are as follows:

(1)     that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true;

(2)     that the tax return was false as to a material matter;

(3)     that the defendant signed the return willfully and knowing it was false; and

(4)     that the return contained a written declaration that it was made under the penalty of perjury.

United States v. Boulerice, 325 F.3d 75 (1st Cir. 2003). See also United States v. Bishop, 412 U.S. 346, 350 (1973); United States v. Drape, 668 F.2d 22, 25 (1st Cir. 1982).

### (1)     The defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true

The Government will show that the Defendant prepared, signed and filed U.S. Individual

Income Tax Returns for tax years 1996 and 1997.  The Defendant admitted preparing and filing

his own tax returns for the Prosecution Years to the IRS.  Furthermore, there is a statutory

presumption provided by the Internal Revenue Code, 26 U.S.C. § 6064, which provides:

> The fact that an individual's name is signed to a return, statement, or other document
>
> shall be prima facie evidence for all purposes that the return, statement, or other
>
> document was actually signed by him.

The statutory presumption has practical consequences at trial, because it obviates the

need to present direct evidence showing that the Defendant actually signed the returns; it is

sufficient that the Defendant's name is on the returns and the returns are true and correct copies

of returns on file with the Internal Revenue Service.  United States v. Wilson, 887 F.2d 69, 72

(5th Cir. 1989); United States v. Carrodeguas, 747 F.2d 1390, 1396 (11th Cir. 1984).

####    (2)        The tax return was false as to a material matter

#####        A.        Falsity

As a preliminary matter, in a § 7206(1) prosecution a return must be false.  However, the

Government does not have to prove that every item charged is false.  The same is true of a

charge that a defendant omitted several items from his return.  See Griffin v. United States, 502

U.S. 46 (1991) (when a jury returns a guilty verdict on an indictment charging several acts in the

conjunctive, the verdict stands if the evidence is sufficient as to any one of the acts charged);

United States v. Helmsley, 941 F.2d 71, 91 (2d Cir. 1991) (finding that where deductions taken

by taxpayer were either overstated or mischaracterized, in either case entry was "false and

fraudulent").   It is also permissible to present to a jury alternative theories of falsity.  See United

States v. Foley, 73 F. 3d 484, 493 (2d Cir. 1996) (noting that "properly instructed jury" could

8

convict under § 7206(2) for deduction of a bribe that was either illegal under federal law, illegal under state law, or legal but not an ordinary business expense, but reversing conviction where one of the alternate bases was invalid as a matter of law).

In this case, the Defendant has already admitted to the IRS that he failed to report personal expenditures paid on his behalf by his company.  The remaining questions of falsity hinge on how the funds he diverted from FCM to himself should be treated for tax purposes. Broadly, the treatment of the diverted money can fall into two categories: loans or corporate distributions.   In either case, the Government will demonstrate that the Defendant materially under reported his income.

### 1.    Loans

#### a.    Loans without an Obligation to Repay

The principal Government theory of a substantial tax deficiency is that the monies advanced to the Defendant were not good faith loans, and that there was little to no effort nor evidence to indicate any intent by the Defendant to repay the funds advanced.  See Webb v. IRS, 15 F.3d 203 (1st Cir. 1994). "A loan does not in itself constitute income to the borrower, because whatever temporary economic benefit he derives from the use of the funds is offset by the corresponding obligation to repay them." James v. United States, 366 U.S. 213, 219 (1960). However, "where it is apparent that the recipient recognizes no obligation to repay, the transaction becomes a wrongful appropriation [and comes] within the broad sweep of 'gross income'".  Ibid.  See also Webb v. IRS, 823 F. Supp. 29 (1st Cir. 1993).

The factual determination as to whether a particular transaction is a bona fide loan turns on whether there are sufficient indicia of the parties' intention that the monies advanced be

repaid.  See Crowley v. Commissioner, 962 F.2d 1077, 1079 (1st Cir. 1992);  Moore v. United States, 412 F.2d 974, 978 (5th Cir. 1969).  The general rule is that loans without a true obligation to repay are taxable to the recipient once he exercises dominion and control over them.  Moreover, a number of courts have held that if the defendant is the sole shareholder in the corporation, dominion and control over the funds can be sufficient to give rise to individual tax liability.  United States v. Toushin, 899 F.2d 617, 623-24 (7th Cir. 1990); United States v. Curtis, 782 F.2d 593, 598 (6th Cir. 1986).  See also United States v. Knight, 898 F.2d 436, 437 (5th Cir. 1990).

In this case, the Defendant exercised complete dominion and control over the funds he diverted from FCM to himself.  He used the funds primarily for two purposes: to fund real estate investments and to fund his and his family's lifestyle.  Because the legal test for taxable income is dominion and control, and that test by its terms excludes consideration of what happens to income after it flows from the taxpayer's hands, the Government will demonstrate that the diverted funds should be considered income to the Defendant, and that said income was not reported to the IRS.

The Government will seek to have the jury determine if there was an intent to repay.  While the funds advanced to the Defendant were documented as "loans to shareholder" on FCM's books and records, the Government will submit to the jury that such bare documentation does not satisfy the "intent to repay" standard.  For example, as Chief Judge Friendly wrote in United States v. Rosenthal, a jury could conclude there was no intent to repay "even if (the defendant) had daily recited a litany of intention to pay." United States v. Rosenthal, 454 F.2d 1252, 1254 (2nd Cir. 1972). 470 F.2d 837 (2d Cir. 1972).  The test, as articulated in Rosenthal, is

whether the Defendant acquired things of value "without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition." Id., citing James v. United States, 366 U.S. 213 (1966).  Absent a genuine intent to repay, the funds the Defendant diverted were taxable income once he exercised dominion and control over them.

<i>b.     Cancellation of Indebtedness Income</i>

The Government also intends to present the alternative theory that the Defendant received income when he ordered FCM's bookkeepers to cancel his so-called debts.  Even if the jury were to conclude that at the time the Defendant diverted these funds from FCM, there existed a bona fide loan, when the Defendant wrote the so-called debts off, he would be charged with receiving cancellation of indebtedness income in the amount that he wrote off.  See 26 U.S.C. § 61(a)(12).  In addition to evidence of the cancellation of the so-called debts of $517,000 and $743,569, the Government also intends to introduce evidence that the Defendant ordered FCM's accountants to write off $1,000,000 of his putative shareholder loan account during the Prosecution Years.

<b><i>2.     Corporate Diversions</i></b>

Absent characterization as a loan, most courts have generally held that in a criminal prosecution of a shareholder who has diverted corporate funds, as in any criminal tax case, the Government establishes a prima facie case by proving the defendant's receipt of funds having the appearance of income.  See United States v. Fogg, 652 F.2d 551, 553-55 (5th Cir. 1981); Miller, 545 F.2d at 1215 n.13; United States v. Lacob, 416 F.2d 756, 760 (7th Cir. 1969); United States v. Garcia, 412 F.2d 999, 1001 (10th Cir. 1969).  The defendant then has the burden of going forward with evidence that the transaction was originally treated as a loan or other

11

evidence tending to negate a tax deficiency.  See Miller, 545 F.2d at 1215; United States v. Bok, 156 F.3d 157, 163-64 (2d Cir. 1998);

Assuming that the funds the Defendant diverted to himself could be considered a corporate distribution, the diversions' tax treatments would be determined pursuant to 26 U.S.C. § 301.  As corporate distributions, three possible characterizations for the diverted funds are appropriate: dividend, return of capital, and capital gain.

Generally, dividends are funds paid out of the earnings and profits (the "E&P") of a corporation.  Any further amounts he received in excess of the corporation's earnings and profits can either be considered as return of capital, a capital gain, or money wrongfully taken.  See, e.g., Currier v. United States 166 F.2d 346 (1st Cir. 1948).

Assuming that the funds diverted were considered a return of capital, such characterization would only make such diversions non-taxable to the extent of the Defendant's basis.  Any diversions in excess of the Defendant's basis would constitute taxable income.  If the Court requires, the Government's expert will prove that the Defendant's diverted funds to himself before tax year 1996 were well in excess of his basis.  Therefore, it is the Government's position that all distributions in 1996 and 1997 would generate taxable income to the Defendant.

Under the reasoning used by the Second Circuit in United States v. D'Agostino, a taxpayer who actively seeks to evade taxes and is discovered by the IRS can absolve himself of criminal responsibility by claiming that the funds should be considered a return of capital, and

12

thus not taxable. 145 F.3d 69 (2d Cir. 1998). However, to take advantage of the rule in

D'Agostino,[1]

> (1)    the diversion must not be illegal, and

> (2)    the Defendant must have capital invested in his company greater than the amount
>         he diverted.

As it has described in its previous motion, the Government submits that the Defendant

should not be permitted to take advantage of the rule in D'Agostino because his diversion of

funds from FCM were illegal attempts to obstruct justice, violate court orders and defraud third-

party creditors.

His 1996 diversion of $517,000 was done to conceal his actual income in the Guenther

Litigation. The Defendant used nominee entities to conceal his ownership in the property

purchased with the $517,000, and the Defendant falsely and fraudulently failed to disclose in his

court-ordered financial statements his ownership interest in property purchased with the money.

In 1997, the Defendant filed financial statements with the court in the Guenther Litigation that

failed to disclose his use of the $743,569 to pay a mortgage for Broadway Realty Trust. That

1997 payment for the benefit of Broadway Realty Trust also violated a court-ordered injunction

entered against the Defendant, prohibiting him from making transfers of assets out of the

ordinary course of business.

---

[1]    The Second Circuit's opinion in D'Agostino made clear that the "'no earnings and
profits, no income' rule would not necessarily apply in a case of unlawful diversion, such
as embezzlement, theft, a violation of corporate law, or an attempt to defraud third party
creditors." 145 F.3d at 73. In United States v. Bok, the Second Circuit affirmed its
position, stating: "We have made clear that the return of capital theory applies equally in
both criminal and civil cases, **assuming that the diversion itself was not unlawful**."
(emphasis supplied) 156 F.3d 157, 162 (2d Cir. 1998).

As the Government understands this Court's previous ruling, the Court will make a determination as to whether the Defendant's actions were illegal based on the evidence presented at trial and based on a preponderance of the evidence standard.  At that point, the Court will either choose to permit or not to permit jury instructions, testimony, and argument regarding the possibility that the Defendant's distributions were non-taxable returns of capital.  If the Court rules in the Government's favor, the question of the taxability of the Defendant's distributions will be based solely on (1) whether the distributions were loans, and (2) whether the distributions had the appearance of income, i.e., did the Defendant exercise dominion and control over the funds.  The Government requests guidance from the Court on how to present the evidence of the Defendant's illegal and/or fraudulent diversions.

### B.    Materiality

A material matter is one having a natural tendency to influence or impede the IRS in ascertaining the correctness of the tax declared or in verifying or auditing the returns of the taxpayer. See United States v. DiRico, 78 F.3d 732, 736 n.1 (1st Cir. 1994) (noting that proof of the test articulated in United States v. DiVarco, 484 F.2d 670, 673 (7th Cir. 1973), satisfies materiality element); see also United States v. Boulerice, 325 F.3d 75 (1st Cir. 2003).

### (3)    The return, statement, or other document contained a written declaration that it was made under the penalties of perjury

Section 7206(1) requires that the return, statement, or other document be made "under the penalties of perjury."  This element should be self-evident as the document either does or does not contain a declaration that it is signed under the penalties of perjury.  A signature plus the declaration is sufficient; the document need not be witnessed or notarized.  As required by 26 U.S.C. § 6065 (1986), all income tax returns contain such a declaration.

14

**(4)     The defendant signed the return willfully and knowing it was false.**

The Supreme Court has defined willfulness as a voluntary, intentional violation of a known legal duty. Cheek v. United States, 498 U.S. 192, 200-01 (1991); United States v. Pomponio, 429 U.S. 10, 12 (1976); United States v. Bishop, 412 U.S. 346, 360 (1973). The Government, however, does not have to show any additional bad purpose or evil motive, other than the above-defined violation. See Cheek, 498 U.S. at 200-01 (1991); United States v. Gilbert, 266 F.3d 1180, 1185 (9th Cir. 2001) (opining that bad faith or bad purpose was not required to prove willfulness in violation of 26 U.S.C. § 7202)

The Government does not have to establish willfulness with direct evidence. United States v. Magnus, 365 F.2d 1007 (2d Cir. 1966). "Willfulness may be shown by means of circumstantial evidence alone." United States v. Schiff, 612 F.2d 73, 77-78 (2d Cir. 1979). Willfulness may be inferred from a number of different activities including "concealment of assets or covering up sources of income, handling one's affairs to avoid making the records usual in transactions of the kind, and any conduct the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. at 499 (1943).

Knowledge of a person's willful intent may be shown by the surrounding facts and circumstances. These include a defendant's knowledge of income or revenues, his hiring of an accounting firm, his active role in business operations, and his payment of taxes. United States v. Mohney, 949 F.2d 1397, 1407-08 (6th Cir. 1991). A defendant's maintenance of assets in the names of other individuals is also evidence of willfulness. See Daniel, 956 F.2d 540 (6th Cir. 1992).

Prior and subsequent similar acts are also admissible to prove willfulness.  United States v. Middleton, 246 F.3d 825, 836-37 (6th Cir. 2001) (20-year-old tax return admissible to show knowledge of legal duty to file income tax returns); see also 404(b) discussion infra.  Moreover, general educational background and the experience of the Defendant can be considered as bearing on the Defendant's ability to form willful intent.  See, e.g., United States v. Klausner, 80 F.3d 55, 63 (2d Cir. 1996) (defendant's extensive business experience); United States v. Rischard, 471 F.2d 105, 108 (8th Cir. 1973) (may consider general educational background and experience in determining willfulness); United States v. Raymond, 436 F.2d 951, 953-54 (7th Cir. 1971) (holding that defendant's business experience can be a basis for an inference of willfulness).

In a section 7206(1) prosecution, the Government is not required to show an intent to evade income taxes by the Defendant.  United States v. Taylor, 574 F.2d 232, 234 (5th Cir. 1978); United States v. Engle, 458 F.2d 1017, 1019 (8th Cir. 1972).   There is also "no requirement that showing the specific intent for a section 7206(1) violation requires proof of an affirmative act of concealment; it is enough that the Government show the defendant was aware that he was causing his taxable income to be underreported."  United States v. Barrilleaux, 746 F.2d 254, 256 (5th Cir. 1984).

The defendant's signature on a document can help establish willfulness.  See United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982) (finding that defendant's signature is sufficient to establish knowledge once it has been shown that the return was false); United States v. Romanow, 505 F.2d 813, 814-15 (1st Cir. 1974) (noting that the jury could conclude from

nothing more than the presence of his uncontested signature that he had in fact read the Form 941).

Under well-established precedent, the Government need not show direct evidence of tax motivation. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Hilton, 894 F.2d 485, 487 (1st Cir. 1990) ("The prosecution may prove its case by circumstantial evidence . . . ."); United States v. Nivica, 887 F.2d 1110, 1113 (1st Cir. 1989); see also McKenna v. United States, 232 F.2d 431 (8th Cir. 1956) (willfulness may be inferred from facts and circumstances attending the act, and one may be presumed to intend the necessary and natural consequences of his acts). "The jury may . . . infer willfulness from the fact of under reporting coupled with evidence of conduct by the defendant tending to mislead or conceal." United States v. Sorrentino, 726 F.2d 876, 880 (1st Cir. 1984) (citing Holland v. United States, 348 U.S. 121, (1954)).

In this case, the Government intends to use evidence of the Lawsuits during the Prosecution Years to show the Defendant's joint intent to hide his money both from the IRS and the plaintiffs in those cases. Throughout the Prosecution Years, the Defendant's purpose, motivation, and intent for establishing such a complex structure of his finances, including numerous entities, nominee entities, nominee presidents and the repeated transfer of funds between those entities, was because he knew other litigants were looking into his finances in order to collect on potential judgments, and would examine his tax returns. The Government intends to provide the jury with evidence both of the facts regarding the complexity of the Defendant's finances and the existence of the Lawsuits in order to prove the Defendant's willfulness.

17

## VII.    **EVIDENTIARY ISSUES**

### A.    **Summary and Expert Witness**

To assist the jury in the examination of income tax calculations and other evidence that will be introduced to prove the charges in the Indictment, the Government intends to rely on expert and summary witnesses.  In this case, the Government will present IRS Technical Advisor Bruce Hess and IRS Revenue Agent Paul White as its summary and expert witnesses (the "IRS Experts").  These witnesses will testify in connection with charts and summaries that will be prepared from the Government's evidence.[2]

Admission of expert testimony is governed by Federal Rule of Evidence ("Rule") 702 which provides:

> Testimony by Experts: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702; see also DeClue, 899 F.2d at 1473. see also United States v. Mikutowicz, 365 F.3d 65 (1st Cir. 2004) (It is well established in several circuits that "expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence" citing United States v. Windfelder, 790 F.2d 576, 581 (7th Cir. 1986)).

---

[2]  The Government has provided to the defense a copy of the witness' resumes and a written summary of their  anticipated testimony as required by Fed. R. Crim. P. 16(a)(1)(E).  The Government intends to provide drafts of the charts and summaries it intends to use at trial to the Defendant shortly.

Because the IRS Experts' testimony will be based on evidence admitted at trial, the Government requests their presence in the courtroom throughout trial. Such use has been consistently approved by courts. See United States v. Lussier, 929 F.2d 25 (1st Cir. 1991).

Based on the testimony of witnesses appearing at trial and records of the Defendant's business and tax returns, Technical Advisor Hess will introduce computations and schedules reflecting the Defendant's basis, income and taxes. Technical Advisor Hess will also explain tax concepts to the jury, testify about FCM's E&P, the Defendant's basis in his company, the Defendant's capital accounts and transactions in related businesses, as well as the IRS's criteria for determining whether an advance of money from a company constitutes a bona fide loan.

Moreover, Agent Hess will provide expert testimony, based on his analysis of the transactions undertaken by the Defendant, to show that the monies transferred from the FCM companies to the Defendant had the appearance of income. The summary of schedules and tax computations will be based on the evidence admitted during the trial.

Revenue Agent Paul White will also provide testimony on the calculations of tax loss associated with the Defendant's actions, and the basis for those calculations.

**B.      Summary Evidence**

District courts have routinely allowed the Government to introduce charts and summaries based on the evidence. See United States v. Johnson, 319 U.S. 503, 519 (1943); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979); see also Rule 1006 (specifically permitting the use of charts and summaries, even when the underlying records are not produced in court). The summaries need not contain a defendant's anticipated evidence. Myers v. United States, 356 F.2d 469, 470 (5th Cir. 1966);

19

Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).  Copies of the summaries may be used during the testimony concerning them.  See Myers, 356 F.2d at 470.  The summaries may be used during deliberations.  See United States v. Koskerides, 877 F.2d at 1129, 1134 (2d Cir. 1989); United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971).

Courts have addressed the issue of summaries and described three kinds of summaries: (1) primary-evidence summaries, (2) pedagogical-device summaries or illustrations; and (3) secondary-evidence summaries that are a combination of (1) and (2) "in that they are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case."  United States v. Bray, 139 F.3d 1104, 1112 (6th Cir. 1998), cited with approval by United States v. Capozzi, 2005 U.S. Dist. LEXIS 7919 (D.Mass. 2005).

Primary-evidence summaries that are admissible pursuant to Rule 1006 summarize "voluminous writings, recordings or photographs which cannot be conveniently examined in court."  Fed. R. Evid. 1006.  The summaries rather than the underlying documents are to be considered evidence.  See Bray, 139 F.3d at 1111 (citing 1 Edward J. Devitt, et al., Federal Jury Practice and Instructions § 14.02 (4th ed. 1992); and 1 Leonard B. Sand, et Al., Modern Federal Jury Instructions (Criminal) § 5.05, pp. 5-34 (1997)).  Therefore, these documents are properly admissible as evidence without a limiting instruction, and the Government anticipates using some primary-evidence summaries.

Pedagogical device summaries or illustrations that clarify or simplify evidence or assist counsel in argument to the jury are permissible pursuant to Rule 611(a).[3]  Bray, 139 F.3d at 1111-1112.  A pedagogical device may include information on a drawing, flip chart, summary, graph, or illustrative aids that:

> (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent.  This type of exhibit is 'more akin to argument than evidence' since [it] organize[s] the jury's examination of testimony and documents already admitted into evidence.

Id. at 1111 (citing United States v. Paulino, 935 F.2d 739, 753 (6th Cir. 1991) (brackets in original); Scales, 594 F.2d at 564.  These devices are generally not admitted as evidence, and the Court should give a limiting instruction "which informs the jury of the summary's purpose and that it does not constitute evidence."  Paulino, 935 F.2d at 753; accord Bray, 139 F.3d at 1111;[4]

---

[3]  Rule 611(a) provides:

> (a) Control by court.  The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

[4]  The Bray court noted:

> that in appropriate circumstances not only may such device summaries be used as illustrative aids in the presentation of the evidence, but they may also be admitted into evidence even though not within the specific scope of Rule 1006.  Such

United States v. Campbell, 845 F.2d 1374, 1381 (6th Cir. 1988).  The Government intends to use pedagogical devices and requests that the Court instruct the jury that these charts are not evidence but are used only as an illustrative aid.

The final type of summary, secondary-evidence summaries, a combination of (1) and (2), are "admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding of the evidence."  Bray, 139 F.3d at 1112.  When this evidence is admitted, a court should instruct the jury that the summary "is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes."  Id.  Some of the charts that the Government intends to introduce may fall into this category.  The use of summaries in cases involving complicated documentary proof has been approved in the First Circuit.  See Gordon v. United States, 438 F.2d 858 (1st Cir. 1971).[5]

---

circumstances might be instances in which such pedagogical device is so accurate and reliable a summary illustration or extrapolation of testimonial or other evidence in the case as to reliably assist the fact finder in understanding the evidence, although not within the specific requirements of Rule 1006.

Id.

[5]     The Government has provided the Defendant with the primary evidence that will constitute the basis of any charts or summaries it will introduce, in order for the Defendant to be afforded a reasonable opportunity for comparison so that the correctness of the summary may be tested on cross-examination. See, e.g., Cooper v. United States, 91 F.2d 195, 198 (5th Cir. 1937).

### C.    Visual Aids

The Government also intends to use visual aids such as enlargements of evidence. Demonstrative aids may be used in the trial judge's discretion with a limiting instruction that they are not evidence, but are used for the purpose of aiding the jury in its examination of the evidence.  See Scales, 594 F.2d at 563-64; see also United States v. Lattus, 512 F.2d 352, 353 (6th Cir. 1975) (per curium); United States v. Rath, 406 F.2d 757, 758 (6th Cir. 1969).

There is a distinction between a Rule 1006 summary and a demonstrative aid.  See 5 J. Weinstein & M. Berger, Weinstein's Evidence § 1006[07], at 1006-15 (1991).  The former is admitted as substantive evidence, without requiring that the underlying documents themselves be in evidence.  The latter is not itself evidence, but is only an aid in evaluating the evidence.  See id.; White Industries, Inc. v. The Cessna Aircraft Co., 611 F. Supp. 1049, 1069 (W.D. Mo. 1985); see also Scales, 594 F.2d at 565.

The physical format of demonstrative aids may vary; they may be in a variety of colors and type fonts, to emphasize particular aspects of a case.  Such aids "are particularly useful in showing time sequences, [and in] tying together testimony and exhibits to show chronological and personal relationships."  Weinstein's Evidence, § 1006[07], at 1006-15.  The Government is likely to use such visual aids at trial.

### D.    Intrinsic and Extrinsic Evidence

Rule 404(b) allows the introduction of other crimes or bad acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. United States v. Gilbert, 229 F.3d 15 (1st Cir. 2000).  This Court has previously addressed one potential Rule 404(b) issue, and held that the Government will be able to introduce evidence

23

related to the Guenther Litigation, though it will refrain from discussing the nature of the underlying case.

The Government proposes to introduce evidence of the Lawsuits through stipulation, in order to limit the testimony to those permissible issues and in order to expedite the trial. If such a stipulation is not possible, the Government intends to introduce this evidence through the testimony of attorneys involved in the Lawsuits. Again, the testimony would generally be limited to (1) the timing of the litigation, (2) the fact that parties were suing the Defendant or his wholly-owned companies, (3) each plaintiff sought money damages and attempted to investigate the Defendant's financial position, (4) certain facts related to the timing of events during the litigation, which relate to the timing of the certain of the Defendant's financial actions.

The Government submits that the evidence of the Lawsuits is intrinsic to criminal activity which has been charged in the Indictment. "Intrinsic" acts are those that are part of a single criminal episode. United States v. Epstein, 426 F.3d 431 (1st Cir. 2005). Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity. Id. The Defendant's actions are intrinsic because they show a clear motivation for filing false income tax returns.

If the Court does not find such evidence intrinsic, the Government would seek to admit evidence of the Defendant's intent, motive, and lack of mistake. In determining whether to admit Rule 404(b) evidence, courts in the First Circuit apply the two-part test summarized in United States v. Trenkler, 61 F.3d 45, 52 (1st Cir. 1995). First, a court asks whether the proposed evidence "has some 'special relevance' independent of its tendency simply to show criminal propensity," Id. (quoting United States v. Guyon, 27 F.3d 723, 728 (1st Cir. 1994)).

24

Second, the court performs a Rule 403 analysis to determine whether the evidence is relevant. See id. The Government's anticipated evidence of the Lawsuits does not show any criminal propensity on the part of the Defendant, and is relevant to determine willfulness.

### 1.    *Defendant's Financial Transactions*

The Government intends to introduce evidence regarding a number of financial transactions intrinsic to this case. Because the Defendant undertook a number of financial transactions both before and after the Prosecution Years which directly relate to the 1996 and 1997 Returns, the Government intends to use such transactions to show the Defendant's willfulness, and to prove the proper characterization of prior or subsequent transactions. The use of such information has recently been held to be proper in the First Circuit in United States v. Simonelli, 237 F.3d 19 (1st Cir. 2001).

In Simonnelli, the Government showed that the defendant reported a high income to two companies when it was in his interest to show a high income, but reported a "paltry" income to the IRS. Id. The First Circuit reasoned that based on those facts, a jury could conclude he was willing to mislead the IRS, and thus the jury could infer an intent to commit fraud. Id.

Similarly, the Government will seek in its case in chief to show evidence of the Defendant's statements about his finances, both spoken and in writing, which were provided to third parties, including courts, other financial institutions, business partners, etc. These statements by the Defendant will provide evidence regarding the truth or falsity of the Defendant's statements on his tax return, and will provide evidence of his willfulness.

### 2.     *Defendant's Filing History*

The Government will offer the filing history of the Defendant, as well as the filing history of the companies and trusts in which he exercised some modicum of control, as direct evidence of willfulness, to establish amounts he invested in FCM, and to establish how much money he disgorged from his company, as well as other related entities over which he exercised control.   Such evidence will be necessary to establish willfulness, absence of mistake.  United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986) (evidence of defendant's questionable compliance with the tax laws, both in the years prior to and subsequent to the years of charged conduct, is probative of willfulness).   Such evidence may also be necessary to establish the Defendant's basis in FCM, in the event the Government is required to so establish.  The Government may also seek to admit tax filings subsequent to tax year 1997. See, e.g., United States v. Chevalier, 1 F.3d 581, 584 (7th Cir. 1993) (during tax fraud trial the Government was allowed to question defendant regarding his subsequent bank fraud because Federal Rule of Evidence 608(b) allows specific instances of misconduct that occurred prior to taking the stand—not prior to the crime with which he is charged).

### E.     **Admissibility of Documents**

As in all tax cases, the Government will offer numerous documents into evidence. Although the Government expects that the Defendant may stipulate to the admissibility of many of these documents, the Government will briefly address the issue of their admissibility in case he does not.

### 1. Service Center Records

The Government will offer documents from Internal Revenue Service Centers through an IRS witness. These documents will include income tax returns, which are admissible under Rules 803(6), 803(8), and 902, and 26 U.S.C. § 6064. If necessary, the Government may also offer transcripts, certificates of assessments and payments, and certification of lack of records, admissible under Rules 803(6), 803(8), 803(10), and 902. United States v. Spine, 945 F.2d 143, 148-49 (6th Cir. 1991); United States v. Bowers, 920 F.2d 220, 223-24 (4th Cir. 1990) (admissibility of Internal Revenue Service computer records); United States v. Neff, 615 F.2d 1235, 1241 (9th Cir. 1980); United States v. Farris, 517 F.2d 226, 227 (7th Cir. 1975).

Because the Defendant filed computerized tax forms (Form 1040 PC) for tax years 1996-1997, which do not have clear descriptions of the line items on the returns, the Government's Internal Revenue Service Center representative may also testify regarding how the computerized tax form relates to the more traditional Form 1040.

### 2. Business Records

The Government will also offer business records pursuant to Rule 803(6). These records will include bank records such as account statements, deposit slips, deposit items, and checks, as well as business records of various individuals and corporations including accounting records, correspondence, checks, and statements of account. These records are admissible as an exception to the hearsay rule.

A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that

business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

Under certain circumstances, the requirements for admission of a business record may be met <u>without</u> the testimony of a custodian or other witness.  <u>See</u>, <u>e.g.</u>, Rule 902(11) (certified domestic records of regularly conducted activity).  The Government intends to use 902(11) Certifications in this case, and has provided the Defendant with the notice required by Rule 902.  The foundational requirements may also be met by other documentary evidence, affidavits, admissions, and circumstantial evidence; or the admissibility may in some cases "be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements."  4 J. Weinstein and M. Berger, <u>Weinstein's Evidence</u> ¶ 803(6)[02], at 803-178 to 179 n. 5, 9.

### 3.  *Photocopies*

Many of the documents that the Government intends to offer into evidence are photocopies of documents.  Photocopies are admissible pursuant to Rules 1002 and 1003.  Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."  Furthermore, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  Rule 1003.

### 4.    *Certified Documents – Public Records*

The Government anticipates offering into evidence attested or certified copies of certain public records.  Certified copies of public records require no extrinsic evidence of authenticity for admissibility.  See Fed. R. Evid. 902(1) and (4); see also Hughes v. United States, 953 F.2d 531, 540 (9th Cir. 1992); Rossi v. United States, 755 F. Supp. 314, 318 (D. Ore. 1990), aff'd, 983 F.2d 1077 (9th Cir. 1993).

### 5.    *Privilege*

The Government intends to offer into evidence the testimony of a number of attorneys.  However, none of that testimony is privileged.

The attorney-client privilege is in derogation of the search for truth, and thus is narrowly construed.  In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 451 (6th Cir. 1983), cert denied, 467 U.S. 1246 (1984).  The privilege does not protect from disclosure all aspects of an attorney's representation of a client, but is limited to only those communications between the lawyer and the client that are necessary to the rendering of legal advice, and are made, in confidence, for the purpose of giving or seeking legal advice.  United States v. Zolin, 491 U.S. 554, 561 (1989), citing Upjohn v. United States, 449 U.S. 383, 389 (1981).  The elements of the privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

29

Humphreys, Hutcheson and Moseley v. Donovan, 755 F.2d 1211, 1219 (6th Cir. 1985), quoting

United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.), cert. denied, 377 U.S. 976 (1964).  The

burden of proving the existence of each of those elements rests upon the party claiming the

privilege.  In re Grand Jury Investigation No. 83-2-35, 723 F.2d at 450-451.  Further, the

privilege must be claimed on a document-by-document or question-by-question basis; a blanket

claim of privilege is insufficient to meet the burden of showing that any information is protected

by the privilege.  United States v. White, 970 F.2d 328, 334 (7th Cir. 1992).  Moreover,

information intended to be disclosed to a third party, or that is actually disclosed to a third party,

is not confidential, even though transmitted to the attorney in confidence.  United States v.

Lawless, 709 F.2d 485, 487 (7th Cir. 1983).

### F.    Admissions

The Government intends to offer admissions made by the Defendant.  A defendant's

statement is never considered hearsay when offered by the Government. Rule 801(d)(2)(A).

Rather, the statement is an admission and it does not require any special guarantee of

trustworthiness.  See United States v. Singleterry, 29 F.3d 733, 736 (1st Cir. 1994).  Rule

801(d)(2) "does not limit an admission to a statement against interest."  United States v. Turner,

995 F.2d 1357, 1363 (6th Cir. 1993).  In United States v. Slone, 833 F.2d 595, 601 (6th Cir.

1987), the court held that grand jury testimony was admissible as an admission.  The Slone court

referred to "the familiar rule of evidence that any statement by a party may be offered against

him by his opponent."  Id.

### G.    Hostile Witnesses

As part of its case-in-chief, the Government will present individuals who may be aligned with the Defendant.  Rule 611(c) provides: "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Rule 611(c).  The comments to Rule 611(c) suggest that leading questions are proper when a witness is unwilling or biased, and describes the phrase "witnesses identified with an adverse party" as an attempt to enlarge the category of persons described as hostile.  "A hostile witness, in the jargon of evidence law, is not an adverse party but a witness who shows himself or herself so adverse to answering questions, whatever the source of the antagonism, that leading questions may be used to press the questions home."  Rodriguez v. Banco Central Corp., 990 F.2d 7, 12-13 (1st Cir. 1993); cf. Woods v. Lecureux, 110 F.3d 1215, 1221 (6th Cir. 1997) (leading questions permitted on direct examination of adverse party).  Accordingly, the Government will request permission to use leading questions if a witness displays these qualities.

### H.    Immunized Witnesses

The Government may also seek testimony from immunized witnesses.  In United States v. Diaz, 662 F.2d 713, 718 (11th Cir. 1981), an immunized Government witness was declared a defense witness.  Under these circumstances, the Government was allowed to use leading questions, but defense counsel was not allowed to use leading questions.  In United States v. Brown, 603 F.2d 1022, 1026 (1st Cir. 1979), the court held that a friend of the defendant, who had lapses of memory, could be questioned by the Government with leading questions. Although the witness was not hostile to the extent of being contemptuous or surly, the court noted that he was both evasive and adverse to the Government.  Even when a party calls an

adverse party or hostile witness and proceeds through leading questions, the examination is still a direct examination.  United States v. Burge, 990 F.2d 244, 247 (6th Cir. 1992).

I.    **Impeachment of Government Witnesses**

Because the Government anticipates some witnesses may be hostile, the Government may have to impeach the credibility of a witness who denies a previous statement or claims that he or she cannot remember a previous statement.  Rule 607 allows the credibility of a witness to be attacked by any party.  The Government may call a witness it knows to be hostile, and it may impeach that witness's credibility.  Surprise is not a necessary prerequisite to impeaching a party's own witness under Rule 607.  See United States v. Palacios, 556 F.2d 1359, 1363 (5th Cir. 1977).

The Government expects the majority of the testimony to be consistent with prior statements.  The witnesses, however, may attempt to protect the Defendant from certain inculpatory statements.  If the Government has to use prior inconsistent statements, the statements will take one of two forms.  First, some witnesses gave statements to the agents during the investigation.  Rule 613 provides for the introduction of prior inconsistent statements, not under oath, of a witness.  The statement may be used for impeachment purposes only; extrinsic evidence of the statement is not substantive evidence.

Second, some witnesses testified before the grand jury.  Rule 801(d)(1)(A) allows a witness's grand jury testimony to be introduced as substantive evidence when a witness gives inconsistent testimony at trial.  See United States v. Distler, 671 F.2d 954, 959 (6th Cir. 1981) (rule "expressly formulated to allow the admission of grand jury testimony"); United States v. Woodward, 149 F.3d 46, 59 (1st Cir. 1998); United States v. Keeter, 130 F.3d 297, 302 (7th Cir.

1997).  The rule provides that an out-of-court statement is not hearsay if the declarant testifies at

trial, is subject to cross-examination concerning the statement, and the statement is "inconsistent

with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing,

or other proceeding. . . ."  Fed. R. Evid. 801(d)(1)(A).  "It is well established that testimony

before a grand jury constitutes 'other proceedings' within Fed. R. Evid. 801(d)(1)(A)."  United

States v. Long Soldier, 562 F.2d 601, 605 (8th Cir. 1977); see also Distler, 671 F.2d at 959.  The

Supreme Court has held that admission of prior inconsistent statements as substantive evidence

of guilt does not violate the Confrontation Clause as long as the declarant testifies and is subject

to cross-examination.  See California v. Green, 399 U.S. 149, 158 (1970).

Testimony is inconsistent under Rule 801(d)(l)(A) whenever a reasonable person could

infer, in comparing the two statements, that they were produced by inconsistent beliefs.  United

States v. Morgan, 555 F.2d 238, 242 (9th Cir. 1977).  Such prior testimony is admissible if it is

"helpful in resolving a material, consequential fact in issue," id., and need not be "diametrically

opposed" to or "logically incompatible" with a witness's current answers in order to be

"inconsistent" within the meaning of Rule 801(d)(l)(A).  United States v. Williams, 737 F.2d

594, 598 (7th Cir. 1984).  Inconsistency may be shown through evasive answers, inability to

recall, silence, or a purported change in memory.  See United States v. Odom, 13 F.3d 949, 955

(6th Cir. 1994) (grand jury testimony admitted as substantive evidence at trial where a witness

gave inconsistent testimony); Williams, 737 F.2d at 608.  A partial or vague recollection is

inconsistent with a total or definite recollection, and justifies admission of a more-detailed grand

jury statement.  See Distler,671 F.2d at 958.  "[I]f a witness has testified to [certain] facts before

a grand jury and forgets or denies them at trial, his grand jury testimony or any fair

33

representation of it falls squarely within Rule 801(d)(1)(A)."  <u>United States v. Marchand</u>, 564

F.2d 983, 999 (2d Cir. 1977); <u>cf.</u> <u>United States v. Thompson</u>, 708 F.2d 1294, 1303 (8th Cir.

1983) (a limiting instruction not required where prior inconsistent statement given under oath at

prior trial).

   Finally, the prosecution may also use prior testimony to impeach its own witnesses even

absent a showing of surprise. Rule 607; <u>United States v. Jordano</u>, 521 F.2d 695, 697 (2d Cir.

1975).  Grand jury testimony is admissible as substantive evidence even if the witness's

testimony was in response to leading questions.  <u>United States v. Woods</u>, 613 F.2d 629, 637 (6th

Cir. 1980) (inconsistent statements before a grand jury were admissible as substantive evidence

even though statements were elicited by leading questions); <u>United States v. Champion Int'l</u>

<u>Corp.</u>, 557 F.2d 1270, 1274 (9th Cir. 1977) (prior inconsistent testimony of witness before grand

jury is admissible as substantive evidence if same witness testifies at trial even though elicited by

means of leading questions).  "It is immaterial whether the prosecutor or defense counsel elicits

the foundation for the testimony, so long as the requirements of Rule 801(d)(1)(A) are satisfied."

<u>Odom</u>, 13 F.3d at 955.

## VIII.  <u>CONCLUSION</u>

The foregoing is a summary of points the Government expects may arise at trial.  If any legal issues arise that have not been covered in this memorandum, the Government respectfully requests permission to file a supplemental memorandum of law.

Respectfully submitted,

*<u>Del Wright Jr.</u>*

/s/ Del Wright Jr.
Susanne Sachsman
Trial Attorneys
U.S. Department of Justice

<u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Government's Trial Brief electronically filed with the Court, and copies are made available to all parties once filed.

*Del Wright Jr.*

/s/ Del Wright Jr.
Trial Attorney

36