UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 04-10123 (DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY VISONE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S PROFFER OF
ILLEGAL TRANSFERS AND
TRANSFERS TO DEFRAUD THIRD PARTIRES**

NOW COMES Defendant, ANTHONY VISONE, by and through his undersigned attorneys, and files the following response to the Government's Proffer of Illegal Transfers and Transfers to Defraud Third Parties (the " Government's Proffer").

**I. INTRODUCTION**

The Government's Proffer starts with an assumed conclusion, namely, the Defendant filed false financial statements in his 1995 Paternity matter.  The Government then takes this square peg and attempts to fit it in the round hole that is the exception to the "no earnings and profits, no income rule" set forth in *United States v. D'Agostino*, 145 F. 3d 69 (2nd Cir. 1998).  *D'Agostino's* exception if it applies at all in this case requires that the attempted fraud be perpetrated through an unlawful diversion on the third party creditors of First City Management ("FCM") and not the third party creditors of the Defendant, individually.

The Government in essence attempts to equate the Defendant's alleged false financial statements to a fraud upon a third party creditor, the creditor being the Plaintiff and the Probate Court in the Paternity matter. The Government does not address the fact that even if deemed creditors, the Plaintiff and Probate Court are creditors of the Defendant, individually. This places the Government's Proffer outside the scope of the *D'Agostino* exception. The *D'Agostino* exception also requires that the financial transactions between the individual and the corporation be either an unlawful diversion. The Government's Proffer defines several of Defendant's financial transactions as "illegal" but the Government fails to cite a single state or federal statute or corporate law which Defendant and/or the transactions violated. The only attempted showing of illegality by the Government is the violation by Defendant of a supposed state court injunction. The Government is, however, unable to produce a copy of the injunction or reproduce the injunction's language. As such it is unclear how the Defendant actually, allegedly violated the injunction.

Finally, the Government ignores the fact that these transactions were conducted by a corporation, First City Management ("FCM") not by the Defendant in his individual capacity. The issue in applying the *D'Agostino* exception is not whether the Defendant filed false financial statements in the Probate Court, but whether the transactions involving Defendant and FCM were legal and if illegal whether the transactions were done to defraud creditors of FCM. The Government's Proffer makes no showing that the cited transactions were illegal or done in violation of corporate law or that the transactions were an attempt by the Defendant to defraud FCM's third party creditors.

In summary the Government's Proffer appears to argue that since Defendant is charged with filing a false return, it then follows that the financial statements filed in the Paternity matter are also false since the income on Defendant's tax return is consistent with the income on the financial statements. Since the paternity matter financial statements are false the Defendant then falls within the *D'Agostino* exception to the "no earnings and profits no income rule." The Government's Proffer, however ignores the fact that if the tax returns are accurate with respect to the Defendant's income then the Probate court financials are also accurate. In which case the argument made in Government's Proffer is moot.

For these reasons the Defendant asserts the Government's Proffer is fatally flawed.

## II. **Government Proffer Makes No Showing There Was An Attempt To Defraud First City Management 's Third Party Creditors As Required By** *United States v. D'Agostino*, **145 F. 3d 69 (2nd Cir. 1998)**

In *D'Agostino* the defendants were charged with taking cash from their business and failing to report the cash as income. The court, ruling in favor of the appellant/defendants stated, "no earnings and profits, no income," *Id* at 72. The court questioned both the defendant's character and intent. "We have little doubt the D'Agostino's acted with bad intentions. For instance, in 1992, James D'Agostino hired Jeffrey Pearlman to prepare fraudulent tax returns reflecting an inflated income to submit to a bank in order to procure a loan," *Id* at 73, n.5. However, the court found that intent was not relevant. "However, bad intentions, alone, are not punishable. The diversion of the funds cannot constitute a criminal offense, despite criminal intent, if no taxes are

3

due," *Id.* The court did, however, create a possible exception to the "no earnings and profits, no income" rule. "We also note that the "no earnings and profits, no income rule" *would not necessarily* (emphasis added) apply in the case of unlawful diversion, such as embezzlement, theft, a violation of corporate law, or an attempt to defraud third party creditors," *Id*. D'Agostino is clearly addressing unlawful diversions from a corporation in an attempt to defraud *the corporation's* third party creditors. The Government in its proffer attempts to bootstrap the exception language in D'Agostino to also apply to an individual shareholder's alleged attempt to defraud the individual's third party creditors. However, just as the filing of a false financial statement with a bank did not void the defendant's argument in D'Agostino, the Defendant's alleged individual bad acts in the Paternity Matter do not void Defendant's argument in this case. That is since FCM had no earnings and profits the disbursements to Defendant were not income and thereby the Defendant is not guilty of the charges in this case. The Government's Proffer makes no showing that the Defendant somehow attempted to defraud third party creditors of FCM.

In addition to stating *the corporation's* third party creditors must be defrauded, D'Agostino states the diversion itself must be unlawful, "We have made clear that the return of capital theory applies equally in both criminal and civil cases; assuming the diversion itself was not unlawful," United States v. Bok, 156 F. 3d 157, 162 (2nd Cir. 1998) citing D'Agostino at 72-73.

The Government Proffer's Section Headings imply that transactions were illegal, (i.e. "Fraudulent Transfers" and "Why It Was Illegal"). However, the Government's Proffer does not cite a single state or federal statute or other corporate law which the

4

transactions are alleged to have violated. The only possible instance where the Government's Proffer cites any possible violation of law is in connection with an injunction. However, the Government is unable to produce both the injunction and/or the language of said injunction. Further there is no allegation by the Government that the state court which allegedly issued the injunction found that the Defendant or FCM violated the injunction. The Government's Proffer in essence simply makes an assumption that an injunction was in place, that the Defendant's actions were not in the ordinary course of business and thus any transfers violated the injunction.

### III. Government Proffer Makes No Showing Any Of The Cited Transactions Were Unlawful

**1. The $517,000 Diversion To Purchase The Foundry In 1996**

The Government's Proffer essentially attempts to simplify and summarize a complicated real estate transaction. The purchase of the Foundry involved many individuals and entities buying a piece of property that was already the subject of prior, extensive legal proceedings. Given these circumstances the complexity of the transaction is not unusual. While the Defendant disagrees with the both the Government's version and characterization of events for the purposes of this filing Defendant's version is not relevant. The Government's Proffer regarding the Foundry transaction makes no allegation that the Defendant through FCM engaged in any unlawful diversion and/or that any third party creditors of FCM were somehow defrauded by the Foundry's purchase.

The Government's Proffer also takes issue with an alleged $2.1 million loan taken by the Defendant in connection with the Foundry. The Government's assertions

regarding the $2.1 million in loans secured by the Foundry are inaccurate in many respects.  The Government fails to make the required showing that the loan was the result of an unlawful diversion taken to defraud the third party creditors of FCM.
It is the Defendant's position that this transaction like the other three transactions listed in the Government's Proffer are immaterial as to whether the Defendant failed to include as income the four items listed in their proffer.

In the Section entitled, "Why it was Illegal", the Government's statement that, "The diversion of the $517,000 was a conscious attempt to defraud both the Probate Court and the Plaintiff in the Paternity case," (Gov't Memo, P.5) is both inaccurate and misleading.

The Defendant did not "conceal his ownership interest by using nominee entities," (Gov't Memo, P. 5).  Rather the Foundry transaction was conducted by FCM and not the Defendant personally.  The financial statements of the Probate Court require personal financial information. There is no requirement for corporate information.  Even assuming arguendo the Defendant did receive the $517,000 there is no requirement on the financial statement that return of capital be listed.  Finally, as set forth above neither the Plaintiff or the Probate Court in the Paternity action were third party creditors of FCM.

    **2. The Weekly $3,000 or $4,000 Deposits**

The Government Proffer's second allegations relate to monthly payments of between $3 and $4,000 dollars which the Government states the Defendant sought to hide by characterizing the money as loans (Gov't Memo P. 6).

Based on the Discovery produced by the Government, independent accounts and not the Defendant were responsible for the characterization of the money as loans,

6

"[David] Dilulis . . . believes his associate, *not Visone* (emphasis added), were the ones (sic) who decided to re-classify these items as loans.  Dilulis doesn't believe they had any discussion with Visone about whether these items should be classified as distributions or wages verses loans,"  (Memo of 9/22/99 Interview of David Dilulus). Further the memo goes on to state that after classifying the moneys as loans the accountants never discussed with Visone his shareholder loan account.

Despite the fact that these moneys were classified as loans by his accountants and not the Defendant, the Government Proffer once again asserts without authority that Visone's actions were illegal and that this was "an obvious attempt to defraud the Probate Court," (Gov't Memo, P. 7).  Even if this Court does not view the monthly payments as loans Defendant is under no obligation under the Probate Financial Forms to report a return of capital.

The Government's Proffer also asserts the proceeds of these monthly payments were used to purchase property in Texas.  Defendant disputes the Government's version and characterization   Once again the Defendant's version is not relevant since the Government's Proffer makes no showing that the Texas property's purchase constituted an unlawful diversion and that unlawful diversion was an attempt to defraud FCM's third party creditors.

The Government's Proffer also ignores certain facts surrounding the Texas property and both the manner in which it was purchased and by whom it was purchased. Given these facts at the time Defendant filed his statement with the Probate Court, the Defendant, even if he had purchased the Texas property individually, would not have been required to disclose the Texas property as a personal asset since title had not passed.

Further, there is no authority offered by the Government that the purchase of the Texas property was an unlawful diversion of FCM's funds. Again the Government makes no showing that the purchase of the Texas property by FCM somehow defrauded the Plaintiff and Probate Court in their capacity as creditors of FCM.

### 3. The $743,000 Diversion To Pay Broadway Realty Trust Mortgage

The Government alleges that the Defendant used a $743,000 payment due to FCM to pay other obligations, specifically, a personally guaranteed mortgage held by Broadway Realty Trust. This $743,000 payment was part of a series of notes/payments due FCM for the sale of FCM's lease asset portfolio. The Defendant denies these allegations as well as the Government's characterization of the events.

The Government asserts that this use of the $743,000 constituted an unlawful diversion of FCM's funds because it violated an injunction. As previously stated the Government fails to produce either a copy of the injunction and/or the language of the injunction that the Defendant allegedly violated. Further the Government does not cite any decision by the state court issuing the injunction that either the Defendant and/or FCM were held in contempt for violating the injunction. The Defendant disputes the existence of an injunction, however any injunction would most likely have allowed for the transfer of assets in the ordinary course of business. The Defendant's transfer of this $743,000 would have constituted a payment in the ordinary course of business. Notwithstanding the above there is no showing by the Government's Proffer that this transaction in connection with the $743,000 was an attempt to defraud third party creditors of FCM. Again there is no showing that the Plaintiff and Probate Court were both third party creditors of FCM.

### 4. The Personal Expenses paid By FCM

The Government asserts that the Defendant used FCM and Broadway Realty Trust to pay numerous personal expenses and that Defendant was obligated to report the value of these expenses. The Government further asserts that Visone admitted his failure to report the value of these expenses. However, a review of Agent David Lazarus, 6/8/99 notes would contradict the Government's assertion, "94-97 [Defendant ] Doesn't believe any other source of income that wasn't recorded." This appears to be Defendant's answer in response to the question, "Did you receive any other forms of compensation other than wages during these years [1994-1997] cars, meals, phone – no"
The Government Proffer makes no showing that the failure to report expenses as income was an unlawful diversion. The Proffer does not allege that this failure to report income was an attempt to defraud FCM's third party creditors, (again Plaintiff and the Probate Court are not third party Creditors of FCM). Finally the Government Proffer does not allow for the fact that under *D'Agostino*, if FCM had no earnings and profits for 1994-1997, then these payments of expenses would not be reportable as income. If these payments are not deemed income then Defendant is not guilty of the crimes in the present case.

### IV. Incomplete Financial Statements Do not Amount To A Fraud Upon The Court

In essence the Government Proffer alleges that by filing personal, inaccurate financial statements in the Paternity matter, the Defendant perpetrated a fraud upon the Probate Court. As the Defendant demonstrates above the Government's argument that this fraud upon Court falls within the *D'Agostino* unlawful diversion exception fails for several reasons. Notwithstanding, Defendant's alleged inaccurate Probate Court financial

9

statements do not rise to the level of fraud upon the court. "Fraud upon the court usually involves the most egregious conduct involving a corruption of the judicial process itself," *Honneus v. Donovan*, 93 F.R.D. 433 (D. Mass. 1982), *aff'd* 691 F.2d 1 (1st Cir. 1982). Defendant's Probate Court Financial Statements were not inaccurate. Even though Defendant showed a reduction in income he still showed significant liabilities. In other words the Financial Statements indicated that the Defendant had other sources of income. The Defendant's conduct in the Paternity suit matter was not egregious. "[The phrase, "fraud upon the court"] cannot be read to embrace any conduct of an adverse party of which the court disapproves," *Kupferman v. Consolidated Research and Manufacturing Corporation*, 459 F. 2d 1072, 1078 (2nd Cir. 1972). Simply because the Plaintiff and the Probate Court disapproved of Defendant's filings in the Paternity matter does not mean Defendant perpetrated a fraud upon the court. Likewise the Government's assumption that the Financial Statements were false does not make it fact.

**V. Conclusion**

The Government starts with the conclusion that since the income reported on Defendant's tax return is false, Defendant's personal, financial statements in the Paternity matter were also false. Yet the Government makes no conclusive showing that said statements were false. The Government then attempts to fit this assumption that the Defendant filed false financial statements within the confines of *D'Agostino's* exception to the "no earnings and profits, no income rule." However the exception requires both a showing of an illegal diversion and an attempt to defraud third party creditors of the corporation from which the moneys were diverted. The Government's Proffer does not cite a single authority that demonstrates Defendant engaged in any unlawful diversion of

any funds.  Finally, the Government's Proffer makes no showing that Defendant attempted to defraud any third party creditor of FCM.  The Plaintiff and the Probate Court in the Paternity matter were clearly not third party creditors of FCM.  For these reasons the Government's Proffer fails to satisfy the requirements of the *D'Agostino* exception.  The Defendant respectfully requests that this Court prohibit the Government from pursuing this theory at trial.

           **ANTHONY VISONE**
           By his attorneys,

           /s/ *Albert F. Cullen, Jr.*
           BBO# 107900

           /s/ *Albert F. Cullen, III*
           BBO#561223
           60 K Street
           Boston, MA
           (617) 268-2240

Dated: May 18, 2006

      I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

           /s/ ***Albert F. Cullen, Jr.***
           Albert F. Cullen, Jr.